UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ABC MORTGAGE CORPORATION
f/k/a JOHN G. MACLEOD
d/b/a ABC MORTGAGE COMPANY,

Plaintiff

v.

SCOTTSDALE INSURANCE COMPANY,
Defendant

Civil Action No. 04-10816-MLW

**DEFENDANT SCOTTSDALE INSURANCE COMPANY'S
MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGEMENT**

Scottsdale Insurance Company ("SIC") is filing this memorandum in Support of its Motion for Summary Judgment on all counts of the Plaintiff's Complaint.

**BACKGROUND**

On or about October 21, 2002, Thomas Mulhern, individually and on behalf of a class of persons and entities similarly situated filed suit against John G. MacLeod d/b/a ABC Mortgage ("MacLeod") in Worcester Superior Court, C.A. No. 02-2218 ("Mulhern Action"). [SOF 7] The complaint alleged that MacLeod violated the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA") and sought class certification pursuant to Mass. R. Civ. P. 23. [SOF 8-9].

On or about November 12, 2002, the plaintiff in this matter sought a defense and indemnity from SIC under a Commercial General Liability Form which was part of SIC policy number CPS0394681. [SOF 1, 11]. In a letter dated December 3, 2002, SIC denied coverage for the claim. [SOF 12]. After that timely denial of coverage, Mulhern, through counsel sought on repeated occasions to get SIC to change its coverage position.

1

52979.2

[SOF 13-14]. Those attempts were unsuccessful, resulting in ABC Mortgage Corporation f/k/a John G. MacLeod d/b/a ABC Mortgage filing a complaint against SIC in Norfolk Superior Court, C.A. No.: NOCV 2004-00558 on April 1, 2004. [SOF 15] The action was subsequently removed to this federal court. [SOF 15] The Complaint contained three counts: Count I (Declaratory Judgment); Count II (Breach of Contract); and Count III (Violation of G.L. c.93A). [SOF 16] With respect to Count III, ABC Mortgage Corporation ("ABC") specifically bases the Chapter 93A claim on alleged violations of G.L. c. 176D, §3(9). [SOF 17] On December 14, 2005, SIC agreed to reimburse ABC Mortgage Company for the reasonable and necessary legal fees incurred in the defense of the Mulhern Action from the date of tender and to assume the defense of the Mulhern Action under a reservation of rights. [SOF 18]

## LEGAL STANDARD

Under Fed.R.Civ.P. 56(c), summary judgment is mandated upon motion, "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where, as here, the movant does not bear the burden of proof on the issue at hand, the movant need only "point out" that there is an absence of proof essential to the non-movant's case. Id. at 326; See Mottolo v. Fireman's Fund Ins. Co., 43 F.3d 723, 725 (1st Cir. 1995) ("As to issues on which the nonmovant has the burden of proof, the movant need do no more than aver 'an absence of evidence to support the nonmoving party's case.'"). In order to defeat the motion, the nonmovant must then come forward with admissible evidence sufficient to "establish ... a genuine issue of material fact on every element essential to his [or her]

2

52979.2

case in chief." Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 479 (1st Cir. 1993) (citation omitted). A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## ARGUMENT

### I. ABC MORTGAGE CORPORATION IS NOT A NAMED INSURED ON THE SUBJECT POLICY

This suit was brought by ABC Mortgage Corporation f/k/a John G. MacLeod d/b/a ABC Mortgage Company. [SOF 15] The named insured is John G. MacLeod d/b/a ABC Mortgage Company. [SOF 1] The Corporation is not a named insured (or, for that matter, any other type of insured) and thus simply has no claim for coverage under the Policy. As a result, SIC is entitled to summary judgment as a matter of law on all counts of the plaintiffs' complaint.

### II. THE POLICY DOES NOT PROVIDE COVERAGE FOR THE ALLEGATIONS OF THE MULHERN ACTION

There is no coverage for the Mulhern Action under the express terms of the Policy. Endorsement CG 2138 (11/85) of the Policy excludes personal and advertising injury (Coverage B). [SOF 4] Therefore, plaintiff must seek coverage for the Mulhern Action under the Property Damage provision of Coverage A. The Policy covers "property damage" which results from an "occurrence". [SOF 5] None of the allegations contained in the Mulhern Complaint constitute an "occurrence" resulting in "property damage". Under the Policy, an "'occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [SOF 6]. The insured's actions as alleged in the Mulhern Complaint do not fall within the meaning of

3

52979.2

an "occurrence" as defined in the Policy. See Western Rim Investment Advisors, Inc. v. Gulf Ins. Co., 2003 U.S. Dist. LEXIS 10338 (N.D. Tx. 2003)(the faxing of the unsolicited advertisements was not an accident and could not be an occurrence under the property damage portion of the general liability policy).

The insured's conduct in repeatedly sending the unsolicited facsimiles to the Mulhern plaintiffs was not an "accident" within the meaning of the Policy, and therefore is not a covered "occurrence." The Supreme Judicial Court has held that the word "accident" in a policy of insurance "...means an unexpected happening without intention or design." See Beacon Textiles Corp. v. Employer Mutual Liability Ins. Co., 355 Mass. 643, 545 (1969). If an insured specifically intends to cause the resulting harm or is substantially certain that such harm will occur, than the insured's act is not an "accident" within the meaning of an insurance policy. Preferred Mutual Insurance Company v. James Gamache, 42 Mass. App. Ct. 194, 198, 675 N.E.2d 438 (1997)( "[T]he resulting injury which ensues from the volitional act of an insured is still an 'accident' within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm or is not substantially certain that such harm will occur."), quoting Quincy Mut. Fire Ins. Co. v. Abernathy, 393 Mass. 81, 83, 469 N.E.2d 797 (1984)(excluding coverage for bodily injury or property damage which is either expected or intended from the standpoint of the insured). See also Smartfoods, Inc. v. Northbrook Property & Casulaty Co., 35 Mass. App. Ct. 239, 241-42 (1993)(if an insured knows with substantial certainty that harm will follow from his conduct it is not necessary that he gauge the degree of harm with precision, and the insured's actions will not fall within the meaning of an "occurrence").

52979.2

4

The harm alleged by the Mulhern class of plaintiffs was a definite consequence of an intended act. ABC Mortgage intended to fax its advertisements to the Mulhern plaintiffs and intended their fax machines to receive and print the advertisements. "It is obvious to anyone familiar with a modern office that receipt is a 'natural or probable consequence' of sending a fax, and receipt alone occasions the very property damage the TCPA was written to address: depletion of the recipient's time, toner, and paper, and occupation of the fax machine and phone line." Resource Bankshares Corp., et al. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 639 (4th Cir. 2005). The only result not intended by ABC Mortgage was that it would be sued for these faxes.

Several Circuit Courts of Appeal, as well as the Massachusetts Superior Court, have held that such fax advertisements do not constitute an "accident" and therefore the insurer does not have a duty to defend the insured under the property-damage portion of the Commercial General Liability policy. See Western Rim Investment Advisors, Inc., et al. v. Gulf Insurance Co., 269 F. Supp. 2d 836, 840 (U.S.D.C. N.D. Tex. 2003), *upheld by* 96 Fed. Appx. 960; 2004 U.S. App. LEXIS 9966 (5th Cir. 2004)(unpublished decision)[Attached to this Memorandum as Exhibit 1]; Resource Bankshares Corp., et al. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 639 (4th Cir. 2005); Am. States Ins. Co. v. Capital Assocs. of Jackson County, Inc., 392 F.3d 939, 943 (7th Cir. 2004); Terra Nova Insurance Co. v. Metropolitan Antiques, LLC, et al., Suffolk Superior Civil Action No. 03-3718 (Jan. 24, 2006)[Attached to this Memorandum as Exhibit 2].

In *Western Rim*, the policy in question contained the same definition of an "occurrence" as the Policy in this matter. In determining whether an event is an "accident", and thus an "occurrence", the Court considered two elements: "(1) the intent

underlying the actor's actions and (2) whether the injury is a reasonably foreseeable or intended consequence of the actor's actions." Id. at 844. The Court concluded that the insured deliberately faxed the advertisements, and the plaintiffs lost use of their facsimile machines, lost potential business opportunities, and expended money on paper and ink. Furthermore, these harms were results that would have occurred whether or not the insureds acted negligently (or "accidentally") in failing to obtain permission to send the faxes. Consequently, the Court held that "the faxing of unsolicited advertisements was not accident and cannot be, therefore, an occurrence under the CGL policy." Id. at 845.

Likewise, the Fourth Circuit has held that alleged unsolicited advertisements do not constitute an "accident" under an insurance policy. See Resource Bankshares Corp., et al. v. St. Paul Mercury Ins. Co., 407 F.3d 631 (4th Cir. 2005). The Court considered whether the event was a natural and probable consequence of the insured's intended actions. Id. at 638. The Court defined an "accident" as "an event which creates an effect which is not the natural or probable consequence of the means employed and is not intended, designed, or reasonably anticipated." Id. at 638. While the Fourth Circuit applied Virginia law, the standard is substantially similar to that of Massachusetts law. See supra Gamache, 42 Mass. App. Ct. at 198; Abernathy, 393 Mass. at 83. Furthermore, the Fourth Circuit expressly rejected the reasoning of *Park University Enterprises, Inc. v. American Casualty Co.*, 314 F. Supp. 2d 1094 (D. Kan. 2004), which held that faxed advertisements could be an "accident" and therefore an "occurrence" which would implicate the property-damage portion of the policy.[1] In *Park University*

---

[1] Similar to *Park University*, the District of North Carolina has held that when the insured believed the fax recipients had requested the information contained in the faxes, the faxing was not an intentional act made with the intent to cause property damage. Prime TV, LLC v. Travelers Ins. Co., 223 F. Supp. 2d 744, 752 (D.N.C. 2002). Both District Court cases, *Park University* and *Prime T.V.*, rely on the alleged mistake of

6

52979.2

the United States District Court for the District of Kansas relied on the insured's allegations that it believed it was sending the facsimiles to recipients who wanted such facsimiles and thus did not intend to cause the damage. Id. at 1105. The Fourth Circuit expressly rejected the "accidental fax" argument as the TCPA prohibits all *unsolicited* advertisements sent by fax. See Resource Bankshares, 407 F.3d 638-39. In noting that the insured offered "no evidence that would cause a reasonable person to mistakenly believe that they had received prior express consent to send their fax ads", the Fourth Circuit held that the insured could not "carry its burden of establishing that the conduct potentially merits coverage." Id. at 638. The Fourth Circuit further held that foreseeability of the insured's conduct was not "an open factual question…because [the insured] plainly (1) intended to transmit the faxes to *someone*, and (2) fail[ed] to present evidence that could reasonably be mistaken as express permission to send these faxes" and the Fourth Circuit could "only conclude that the sending was not accidental."

Very recently the Massachusetts Superior Court, in declaratory judgment action regarding coverage for TCPA claims, granted summary judgment to the insurer and held that the property damage portion of the policy did not cover TCPA claims. See Terra Nova Insurance Co. v. Metropolitan Antiques, LLC, et al., Suffolk Superior Civil Action No. 03-3718 (Jan. 24, 2006) [Exhibit 2]. The Superior Court followed the reasoning of *Resource Bankshare* and *American States Ins. Co.* and held that the resulting injury was not "accidental" as the insured intended the recipients to receive the faxes, which included an understanding that the recipients would incur the loss of paper, ink and toner, and the operation of their facsimile machines would be interfered with. See id. Thus, the

---

the insured that the faxes were not solicited in finding no intent and that such acts constituted an accident and therefore an occurrence, an argument expressly rejected by the Fourth Circuit Court of Appeals. See supra. Resource Bankshares Corp., et al. v. St. Paul Mercury Ins. Co., 407 F.3d 631 (4th Cir. 2005).

52979.2

7

Court concluded that the claims in the underlying class action do not trigger coverage under the property damage portion of the policy. While the Court applied New Jersey law, it noted that there was "little difference between the law of New Jersey and the law of Massachusetts on the issues before the Court." Id. Moreover, the Court cited Massachusetts case law for the proposition that the conduct alleged in the underlying complaint was not accidental. See id., citing Smartfoods, Inc. v. Northbrook Property & Casulaty Co., 35 Mass. App. Ct. 239, 241-42 (1993)(if an insured knows with substantial that harm will follow from his conduct it is not necessary that he gauge the degree of harm with precision, and the insured's actions will not fall within the meaning of an "occurrence"). Therefore, in accord with this recent Massachusetts decision and majority of the Courts that have addressed this issue, this Court should hold as a matter of law that the Mulhern Action is not covered by the Policy and grant summary judgment in favor of the defendant, SIC.

### III.   THE DEFEDANT DID NOT VIOLATE M.G.L. c. 93A.

Assuming arguendo that this Court finds coverage, as a matter of law the defendant did not violate Chapter 93A. The Chapter 93A claim is a section 11 claim, which according to the complaint, is based on alleged violations of G.L. c. 176D, §3(9). [SOF 17]   However, "a violation of G.L. c. 176D, §3(9) . . . does not support a §11 action, i.e., business against business claim, under c. 93A." Spencer Press, Inc. v. Utica Mutual Ins. Co., 42 Mass. App. Ct. 631, 636 (1997). Moreover, even if such were not the case, the alleged violation of Chapter 93A/Chapter 176D did not cause the insured any loss. Without such a loss, there can be no Chapter 93A claim. The Alan Corporation v. International Surplus Lines Insurance Company, 22 F.3d 339, 343, (1st Cir. 1994);

International Fidelity Ins. Co. v. Wilson, 387 Mass. 841 (Mass. 1983) (Under Mass. Gen. Laws ch. 93A, § 11, the plaintiff must show a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception). Here, there is no loss because SIC has now agreed (1) to defend the Mulhern case on a going forward basis up until the time the Court declares no defense obligation exists, and (2) to reimburse the insured for all reasonable defense costs incurred to date in that action. [SOF 18] Therefore, the plaintiff has suffered no loss and cannot recover under Chapter 93A.

To the extent that the plaintiff may argue that its damages are the costs incurred in bringing this declaratory judgment action, these are not appropriate damages for recovery under M.G.L. c. 93A. Rather, they are recoverable under the common law of Massachusetts. See Rubenstein, et al. v. Royal Insurance Company of America, 429 Mass. 355 (1999)(insured entitled to costs of declaratory judgment action asserting defense and indemnity rights under an insurance policy issued by defendant insurance company even if insured was eventually compensated for its defense of the underlying action). See also Preferred Mut. Ins. Co. v. Gamache, 426 Mass. 93, 98, 686 N.E.2d 989 (1997). The question of whether the insured is entitled to the costs of enforcing its contract for insurance does not implicate Chapter 93A or the question of bad faith. "Whether an insurer's refusal to defend was in good or bad faith is largely irrelevant once it has been established that the insurer breached its contract with its insured." Rubenstein, 429 Mass. at 359-60, quoting Aetna Cas. & Sur. Co. v. Pitrolo, 176 W. Va. 190, 194-195, 342 S.E.2d 156 (1986). Thus, M.G.L. c. 93A is not the appropriate vehicle by which to assert a claim for the costs of this litigation. Moreover, while an insured may

9

52979.2

recover the costs of defending or bringing a declaratory judgment action for coverage, the insured is only entitled to recover such costs upon a finding that the insurer owed a defense. See Rubenstein, et al. v. Royal Insurance Company of America, 429 Mass. 355, 359-60, 708 N.E.2d 639 (1999); Preferred Mut. Ins. Co. v. Gamache, 426 Mass. 93, 98, 686 N.E.2d 989 (1997). In this case, as set forth above, the Policy does not cover the Mulhern Action and therefore SIC is not liable to defend and indemnify the plaintiff. Accordingly, it follows that such costs are not a loss recoverable under Chapter 93A. Therefore, as a matter of law, the plaintiff cannot recover under Chapter 93A, and summary judgment should enter in favor of the defendant.

What the Chapter 93A claim really boils down to is that the plaintiff did not like SIC's position that no coverage exists for the Mulhern Action. Ultimately, even if SIC's policy interpretation proves to be incorrect, it is not a violation of Chapter 93A. There is no Chapter 93A violation where an insurer "relie[s] upon a plausible, although ultimately incorrect, interpretation of its policy." Boston Symphony Orchestra, Inc. v. Commercial Union Insurance Co., 406 Mass. 7, 15 (1989). Here, that standard has clearly been met. While there may have been a split in the jurisdictions which had considered the issue at the time of SIC's decision to deny coverage, the subsequent decisions in favor of SIC's position in a majority of the jurisdictions, including Massachusetts, establishes the accuracy, or plausibility at the very least, of SIC's interpretation of its policy.

WHEREFORE, the defendant, Scottsdale Insurance Company, respectfully requests that this Honorable Court grant its motion for summary judgment on all counts of the Plaintiff's Complaint.

SCOTTSDALE INSURANCE CO.

By its attorneys,

/s/ George C. Rockas
George C. Rockas, BBO #544009
Michele Carlucci, BBO #655211
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
155 Federal Street
Boston, MA 02110
(617) 422-5300

## CERTIFICATE OF SERVICE

I, George C. Rockas, hereby certify that on February 15, 2006, I electronically filed the foregoing *Defendant Scottsdale Insurance Company's Memorandum in Support of Motion for Summary Judgment* and caused to be served a courtesy copy of the same to counsel of record by mailing the same via first class mail, postage prepaid, to the following:

Kerry D. Florio, Esq.
Melick, Porter & Shea LLP
28 State Street
Boston, MA 02109-1775

/S/ George C. Rockas
George C. Rockas

52979.2