# EXHIBIT 2

Case 1:04-cv-10816-MLW    Document 28-3    Filed 02/15/2006    Page 1 of 10



/·24

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.  SUPERIOR COURT
CIVIL ACTION
NO. 03-3718 BLS1

TERRA NOVA INSURANCE COMPANY

vs.

METROPOLITAN ANTIQUES, LLC & others.[1]

## MEMORANDUM AND ORDER
## MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Terra Nova Insurance Company's ("Terra Nova") Motion for Summary Judgment, Paper #17. The motion is supported by the third party defendant Royal & SunAlliance USA ("Royal").

### BACKGROUND

This is a declaratory judgment action seeking, among other things, a decision as to the obligation of Terra Nova, if any, to indemnify Metropolitan Antiques, LLC ("Metro"), a defendant in a class action (the "class action")[2] brought by Evan Fray-Witzer and Beardsley Ruml (the "Class Representatives").

The class action charges Metro with violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. sec. 227. In essence, Metro is claimed to have purchased lists of bulk facsimile numbers from two marketing entities, which allegedly targeted new potential clients in Massachusetts who Metro believed might be interested in estate auctions. Thereafter, Metro,

---

[1] Evan Fray-Witzer and Beardsley Ruml as defendants; Royal & SunAlliance USA as a third party defendant.

[2] Fray-Witzer, et al. v. Metropolitan Antiques, LLC, Suffolk C.A. #02-5827 BLS1.

through an agent, began sending unsolicited facsimile advertisements into Massachusetts in the Fall of 2001, and continued doing so through March of 2003.

The Class Representatives contend that Metro's transmission of these unsolicited advertisements caused them, and the members of the class they represent, to incur the loss of paper, ink and toner, and interfered with the operation of their facsimile machines. There is no allegation that the text or contents of the unsolicited facsimile advertisements caused any harm.

Terra Nova, and apparently Royal, provided commercial general liability insurance policies insuring Metro during the period covered by the class action. At issue are portions of Coverage A and portions of Coverage B under Section I of the Coverage sections of the Terra Nova policy.[3] In pertinent part the coverages read as follows:

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . .

   b. This insurance applies to "bodily injury" and "property damage" only if

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory". . . .

* * * * *

COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which

---

[3] Essentially identical clauses appear in the Royal policy.

2

      this insurance applies. . . .

     b. This insurance applies to:

      (1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

      (2) "advertising injury" caused by an offense committed in the course of advertising your goods, products or services; . . .

Section V of the policy contains definitions. Significant to Coverage A is the definition of "occurrence" which is said to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Significant to Coverage B is the definition of "advertising injury."

  1. "Advertising injury" means injury arising out of one or more of the following offenses:

    a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    b. Oral or written publication of material that violates a person's right of privacy;

    c. Misappropriation of advertising ideas or styles of doing business; or

    d. Infringement of copyright, title or slogan.

## DISCUSSION

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law." M.P.M. Builders, LLC v. Dwyer, 442 Mass. 87, 89 (2004); Kesler v. Pritchard, 362 Mass. 132, 134 (1972). Mass. R. Civ. P. Rule 56(c).

Here of course, the facts are not really disputed; rather, it is the Court's burden to interpret the policy language.

At the outset it is important, but not really too significant, to observe that the applicable law is that of the State of New Jersey. Metro is located in New Jersey and that is where the Terra Nova policy issued. The parties are not in dispute on this issue, perhaps because there is little difference between the law of New Jersey and the law of Massachusetts on the issues before the Court here.

Metro and the Class Representatives bear the burden "to bring the claim within the basic terms of the [Terra Nova] policy." Sears Roebuck and Co. v. National Union Fire Ins. Co., 774 A.2d 526, 532 (N.J. Super. Ct. App. Div. 2001). "The insured . . . must first show that he suffered ." Diamond Shamrock Chem. Co. v. Aetna Cas. & Sur. Co., 609 A.2d 440, 464 (N.J. Super. Ct. App. Div. (1992)). However, "generally it is the insurer which bears the burden of demonstrating that a loss falls outside the scope of coverage." Id.

Coverage A.

The Court begins with its assessment of Coverage A dealing with bodily injury and property damage liability. It requires no discussion to observe that "bodily injury" is not a factor in this case. Rather, "property damage" is what may be involved.

Property damage, however, must be "caused by an 'occurrence.'" An "occurrence" is defined in the Terra Nova policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The New Jersey Supreme Court has interpreted the foregoing definition to limit coverage available under Coverage A to accidental occurrences and to preclude coverage for insureds

4

whose conduct was intended or expected to cause an injury. <u>Voorhees</u> v. <u>Preferred Mut. Ins. Co.</u>, 128 N.J. 165, 183 (1992).

> If not, then the resulting injury is "accidental," even if the act that caused the injury was intentional. That interpretation prevents those who intentionally cause harm from unjustly benefitting from insurance coverage while providing injured victims with the greatest chance of compensation consistent with the need to deter wrong-doing. It also accords with an insured's objectively-reasonable expectation of coverage for unintentionally-caused harm.

<u>Id</u>.

> ... our inquiry parallels that taken in interpreting policy exclusions for intentional acts. Those exclusions preclude coverage for injuries expected or intended by the insured.

<u>Id</u>. at 184.

New Jersey law places emphasis on the accidental nature of the resulting injury, rather than the act that caused the injury. <u>SL Industries, Inc</u>. v. <u>American Motorists Ins. Co.</u>, 128 N.J. 188, 207 (1992). See also <u>Harleysville Ins. Co</u>. v. <u>Garitta</u>, 170 N.J. 223, 231, 234-235 (2001).

In the situation before the Court, Metro, through its agent, sent unsolicited facimiles to the Class Representatives and the class members. In so doing Metro intended that the recipients' facsimile machines receive the messages. This knowledge includes the understanding that the recipients would incur the loss of paper, ink and toner, and the operation of their facsimile machines would be interfered with. This is the injury that the Class Representatives claim relief for in their class action. This was not, however, accidental; it was the intended result of the facsimile process. The sending of the facimiles was intentional. See, e.g., <u>Resource Bankshares Corp</u>. v. <u>St. Paul Mercury Ins. Co.</u>, 407 F.3d 631, 638-639 (4th Cir. 2005); <u>American States Ins. Co</u>. v. <u>Capital Assoc. of Jackson County, Inc.</u>, 393 F.3d 939, 943 (7th Cir. 2004).

The claims in the underlying class action do not trigger coverage by Terra Nova under

Coverage A of the policy.

Coverage B.

Coverage B is the "advertising injury" provision. As noted above,

> "Advertising injury" means injury arising out of one or more of the following offenses:
>
> a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> b. Oral or written publication of material that violates a person's right of privacy;
>
> c. Misappropriation of advertising ideas or styles of doing business; or
>
> d. Infringement of copyright, title or slogan.

Neither offenses a., c., or d. apply to the facts of this case. Consequently, the Court's focus must be on offense b. In other words, did Metro's actions, or those of its agent, amount to an oral or written publication of material that violated any member of the class's right of privacy?

In a case referred to above, similarly involving alleged violation of the TCPA by sending unsolicited advertisements via facsimile, the United States Court of Appeals for the Seventh Circuit analyzed the word "privacy." That court said:

> "Privacy" is a word with many connotations. The two principal meanings are secrecy and seclusion, each of which has multiple shadings. . . . A person who wants to conceal a criminal conviction, bankruptcy, or love affair from friends or business relations asserts a claim of privacy in the sense of secrecy. A person who wants to stop solicitors from ringing his doorbell and peddling vacuum cleaners at 9 p.m. asserts a claim to privacy in the sense of seclusion. Some other uses of the word "privacy" combine these senses: for example, a claim of a right to engage in consensual sexual relations with a person of the same sex, or to abort an unwanted pregnancy, has both information (secrecy) and locational (seclusion) components, with an overlay of substance (the objection to governmental regulation).

6

American States Ins. Co., supra, 392 F.3d at 941. See also Rumbauskas v. Cantor, 138 N.J. 173, 179-180 (1994).

The Seventh Circuit then held that advertising injury as set forth in Coverage B of the policy before it was intended to deal with privacy interests in secrecy, not in the interest in being left alone. Id. at 942. The court emphasized the requirement in Coverage B that there must be a "publication" that violates a right of privacy. It concluded:

> In a secrecy situation, publication matters; otherwise secrecy is maintained. In a seclusion situation, publication is irrelevant.

Id.

The Seventh Circuit, therefore, concluded that the underlying lawsuit did not allege that the insured published any information about the plaintiffs in the facsimile advertisements, the facsimiles only interfered with the underlying plaintiffs' right to seclusion, not their right of privacy. Id.

The Fourth Circuit reached the same conclusion in Resources Bankshares Corp., supra, 407 F.3d at 631, also cited above. It concluded that the policy afforded coverage for "making known to any person or organization written or spoken material that violates a person's right to privacy." Id. at 634-635.

This Court is now placed in the position of attempting to divine what New Jersey's high court would do if faced with this case. In Voorhees, supra, 128 N.J. at 175, the New Jersey Supreme Court recited the principles of insurance policy interpretation that it applied as follows:

> Generally, an insurance policy should be interpreted according to its plain and

ordinary meaning.[4]. . . But because insurance policies are adhesion contracts, courts must assume a particularly vigilant role in ensuring their conformity to public policy and principles of fairness. . . . When the meaning of a phrase is ambiguous, the ambiguity is resolved in favor of the insured . . . and in line an insured's objectively-reasonable expectations. . . . Moreover, if an insured's "reasonable expectations" contravene the plain meaning of the policy, even its plain meaning can be overcome. . . . Nonetheless, courts "should not write for the insured a better policy of insurance than the one purchased.

As noted above, the New Jersey Supreme Court in Voorhees went on to discuss the word "occurrence." It observed that the policy before it defined an occurrence as an "accident." It bears repeating that the New Jersey Court said:

> We adhere to the prevalent New Jersey rule and hold that the accidental nature of an occurrence is determined by analyzing whether the alleged wrongdoer intended or expected to cause an injury. If not, then the resulting injury is "accidental," even if the act that caused the injury was intentional. That interpretation prevents those who intentionally cause harm from unjustly benefitting from insurance coverage while providing injured victims with the greatest chance of compensation consistent with the need to deter wrong-doing. It also accords with an insured's objectively-reasonable expectation of coverage for unintentionally-caused harm.

Id. at 183.

As this Court found above in discussing Coverage A, there was nothing accidental about what occurred here. See, e.g., Smartfoods, Inc. v. Northbrook Property & Casualty Co., 35 Mass. App. Ct. 239, 241-242 (1993). Metro, through its agent, intended to send unsolicited facsimiles to the members of the class.[5] Metro intended the facsimiles to be received by the class members'

---

[4] Massachusetts law is basically the same. See, e.g., Davis v. Allstate Ins. Co., 343 Mass. 174, 179 (2001).

[5] It does not change the legal analysis to argue that Metro did not intend to violate the TCPA. It was not the violation of the TCPA that was the harm sued for in the class action. The harm was posited as what happened to the facsimile machines, their ink, paper and toner. See, e.g., Hershenow v. Enterprise Rent-Car of Boston, S.J.C. No. 09359 (January 17, 2006).

facsimile machines. And Metro new, and intended, that the receiving machines would do what was necessary to receive those facsimiles – stop taking other messages and utilize the paper, ink and toner required to produce those messages.

Further, this was not the "making known to any person or organization written or spoken material that violates a person's right to privacy," which the Fourth Circuit found in Resources Bankshares to be necessary to trigger the advertising injury clause. Nor did this the deal with privacy interests in secrecy, found by the Seventh Circuit in to American States Ins. be the requisite issue. Rather, it involved the privacy interest in being left alone.

This Court does not find an accidental cause of harm; nor does it find a violation of the kind of privacy interest provided for in Coverage B's advertising injury clause.

ORDER

For the foregoing reasons, Terra Nova Insurance Company's Motion for Summary Judgment, Paper #17, is ALLOWED. The Court, therefore, declares that Terra Nova Insurance Company has no duty to defend or indemnify Metropolitan Antiques, LLC as a defendant in the class action brought by Evan Fray-Witzer and Beardsley Ruml in Suffolk Civil Action No. 02-5827 BLS.[6] Judgment, with an appropriate declaration, in favor of Terra Nova Insurance Company, should enter at the appropriate time.

_____
Allan van Gestel
Justice of the Superior Court

DATED:    January 24, 2006

---

[6] There is no motion before the Court by Royal & SunAlliance USA. If, however, as argued by it, the Royal policy is identical to the Terra Nova policy on the points decided here, then the same result should obtain on a properly filed motion.