# EXHIBIT F

# MELICK, PORTER & SHEA, LLP

Counsellors at Law

28 State Street
Boston, Massachusetts 02109-1775
(617) 523-6200
Fax (617) 523-8130
www.melicklaw.com

Richard J. Shea
Robert P. Powers
John F. Rooney, III
William D. Chapman
Michael J. Mazurczak *(WI)
Robert T. Treat
William L. Keville, Jr.
Michael R. Byrne
Andre A. Sansoucy
Amy E. Goganian
Keith L. Sachs
Robert W. Healy
Jennifer B. Hardy
Allen J. McCarthy
Caryn L. Daum
Carly K. Wee *(NY)
Angela L. Lockard
Maureen E. Lane (*NH)
Nancy J. Puleo *(CT)
Christine C. Coleman
Adam M. Gattin *(RI)
T. Dos Urbanski *(RI)
Megan E. Kures
Jill M. Brunnelly
Brian J. Cann
Jed E. DeWick
Heather Spellman *(CT & RI)

Of Counsel
Thomas W. Porter, Jr.

*Also Admitted

Two Richmond Square - Suite 104
Providence, Rhode Island  02906
(401) 941-0909
Fax (401) 941-0269

65 Main Street
Plymouth, Massachusetts  02360
(508) 746-5976

March 28, 2003

MAR 3 1

**VIA FACSIMILE (480) 483-6752 (w/o exhibits)**
**& CERTIFIED MAIL — RETURN RECEIPT REQUESTED**

Charles Buchanan
Senior Claims Representative
Scottsdale Insurance Co.
P.O. Box 4120
Scottsdale, AZ 85261-4120

Re:  Claim No.    825650-30
     Pol. No.     CPS0394681
     Insured:     ABC Mort. Co.
     <u>Claimant:</u>   <u>Thomas Mulhern, et al.</u>

Dear Mr. Buchanan:

This firm represents your insured, ABC Mortgage Company (ABC), in the civil action brought by Mr. Mulhern.  I write to demand that the Scottsdale Insurance Company (Scottsdale) defend and indemnify ABC under the property damage provision in the above-captioned policy.  This letter is written pursuant to the requirements of Massachusetts General Laws chapter 93A.

Despite your conclusory December 3, 2002 denial letter, ABC is indeed entitled to coverage under the Scottsdale General Liability insurance policy.  There is no question that Mr. Mulhern's complaint (attached hereto as Exhibit A) alleges "property damage" caused by an "occurrence."  Scottsdale's failure to undertake ABC's defense in December 2002 was an unfair or deceptive act or practice in violation of G.L. c. 93A & c. 176D.  Further denial will likewise violate Massachusetts law.  In addition to defense and indemnification, ABC demands payment by Scottsdale of all attorneys' fees and costs incurred to date — approximately $60,000.

Massachusetts General Laws chapter 176D, § 3(9) sets forth fourteen separate acts or omissions that constitute unfair claim settlement practices.

# MELICK, PORTER & SHEA, LLP

Charles Buchanan
March 28, 2003
Page 2.

ABC alleges that Scottsdale's actions to date violate the following provisions of G.L. c. 176D, § 3(9):

> (c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

> (d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

> (f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; and

> (n) Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

Further unfair or deceptive claim settlement practices by Scottsdale will result in further violations of these provisions and likely other provisions of G.L. c. 176D, § 3(9). There is no question that Scottsdale failed to take appropriate action to investigate this claim. Had Scottsdale done a proper investigation, it would have been readily apparent that ABC is entitled to coverage under the property damage provision of its general liability policy.

Under Massachusetts law, "an insurer is obligated to undertake the defense of a third-party complaint against an insured when the allegations are 'reasonably susceptible' of an interpretation that they state of adumbrate a claim covered by the policy terms." *Timpson v. Transamerica Ins. Co.*, 41 Mass. App. Ct. 344, 346, 669 N.E.2d 1092, 1094 (1996) (quoting *Sterilite Corp. v. Continental Cas. Co.*, 17 Mass. App. Ct. 316, 318, 458 N.E.2d 338, 340 (1983)). The determination of whether a duty to defend exists is made by "envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the policy." *Sterilite,* 17 Mass. App. Ct. at 318, 458 N.E.2d. at 340. Additionally, an insurer should consider "facts that are known or readily knowable by the insurer." *Desrosiers v. Royal Ins. Co. of America*, 393 Mass. 37, 40, 468 N.E.2d 625, 628 (1984); *see also Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 406 Mass. 7, 10-11, 545 N.E.2d 1156, 1158 (1989).

Based upon a fair reading of your December 3, 2002 letter, it is obvious that you made no such analysis in this matter. The only "analysis" you offer is the simple conclusory statement that "[n]one of the allegations contained in the Complaint constitute an 'occurrence' resulting in . . . 'property damage.'" At least one court — prior to the issuance of your denial letter — had specifically held that property damage liability coverage existed for alleged violations of the Federal Telephone Consumer Protection Act (FTCPA) under a General Liability policy, which had the *exact language* of the Scottsdale policy. *See Prime TV, LLC v. Travelers Ins. Co.*, 223 F. Supp. 2d 744 (M.D.N.C. 2002) (copy attached as Exhibit B). There is no substantive

# MELICK, PORTER & SHEA, LLP

Charles Buchanan
March 28, 2003
Page 3.

difference between Massachusetts and North Carolina law regarding insurance policy interpretation. I am confident that a Massachusetts court will follow the *Prime TV* reasoning.

The facts of *Prime TV* are not unlike those presented in this case brought by Mr. Mulhern and are worth reciting:

> Plaintiff markets and sells satellite television services in its capacity as an independent contractor for DirecTV. In January and February 2001, Plaintiff commenced discussions with various companies that specialized in faxed advertisements. These companies allegedly informed Plaintiff that these companies possessed lists of consumers, including their fax numbers, who desired information concerning satellite television services. Plaintiff alleges that the fax companies affirmatively represented to Plaintiff that the lists included only those individuals who had specifically requested information regarding the services provided by Plaintiff. These companies further represented to Plaintiff that they would fax any advertisement prepared by Plaintiff for a designated fee per fax. Based upon these representations, Plaintiff prepared an advertisement for DirecTV services and provided it to several fax companies. In February and March 2001, the faxes were sent to millions of potential customers. As a result of the faxes, Plaintiff was sued in numerous venues throughout the United States. Each of the lawsuits allege that Prime TV violated the TCPA by sending unsolicited facsimile advertisements.

*Id.* at 747

With regard to "property damage," the *Prime TV* court stated that "[t]he act of faxing DirecTV advertisements to the recipients constituted 'property damage' as defined by the Travelers policies." *Id.* at 750. The court based its reasoning on the problems created by unsolicited faxes as identified in the FTCPA's legislative history:

> First, it shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax . . . . [T]he recipient assumes both the cost associated with the use of the facsimile machine, and the cost of the expensive paper used to print out facsimile messages.

*Id.* (quoting *Destination Ventures, Ltd. v. FCC*, 844 F. Supp. 632, 636 (D. Or.1994) (quoting H.R.Rep. No. 102-317, at 5, *reprinted in 14082 U.S. Congressional Serial Set*, 102d Cong.1st Sess. 10, 25 (1991), *aff'd* 46 F.3d 54 (9th Cir.1995))). The *Prime TV* court stated, "[t]hus, as a result of the DirecTV facsimiles, the recipients lost the use of their fax machines as well as permanent loss of facsimile paper and ink," which is "property damage." *Id.* The civil damages stated in the statute were obviously driven by this concern and those damages were designed to compensate consumers for such damage.

# MELICK, PORTER & SHEA, LLP

Charles Buchanan
March 28, 2003
Page 4.

The *Prime TV* court also found that the "property damage" explained above was the result of an "occurrence" as defined by the Travelers policies. *Id.* The court rejected Travelers argument that the sending of faxes was intentional and therefore not an occurrence. *Id.* at 751. The court stated the widely held principle that even intentional acts, the consequences of which are unexpected, can qualify as occurrences. *Id.* Specifically, the court held that

> Although the fax companies intentionally sent the facsimiles to the recipients, as ordered by Prime TV, Prime TV believed that the recipients requested the information regarding Prime TV's services. Therefore, although Prime TV intentionally requested the advertisements to be faxed, such a request is not an intentional act made with the intent to cause property damage. Thus, the "property damage" was the result of an "occurrence" as defined by the Travelers policies and Defendants have a duty to defend Plaintiff in the underlying state actions.

*Id.* at 752.

There is no reason to believe that a Massachusetts court would not make identical findings to those made in *Prime TV.* Scottsdale indeed owes a duty to defend and indemnify ABC. Scottsdale's further denial of coverage under the property damage provision in ABC's general liability policy will likely result in a finding that Scottsdale violated G.L. c. 93A & c. 176D. Under G.L. c. 93A, Scottsdale will be held liable for attorneys' fees and costs incurred by ABC and could be assessed double, if not treble, damages.

Based on the foregoing, ABC's demands on Scottsdale include, but are not limited to, the following:

- Provide ABC with a defense to the civil action at issue;
- Pay all attorneys' fees and defense costs incurred to date — approximately $60,000; and
- Pay any judgment against ABC that results from the civil action at issue.

I encourage you to give this matter your immediate attention and ask that you contact me if you are in need of further information.

Very truly yours,

William D. Chapman
Keith L. Sachs

Exhibits Attached

L1H-3/31/2003 1:07:47 PM

MELICK, PORTER & SHEA, LLP

Charles Buchanan
March 28, 2003
Page 5.

cc:    Maureen A. Gibbons (W/O exhibits)
        John Macleod (W/O exhibits)
        John Ottenberg (W/O exhibits)
        Steve Rahavy (W/O exhibits)

L1H-3/31/2003 1:07:47 PM



L1H-3/31/2003 1:07:47 PM

# COMMONWEALTH OF MASSACHUSETTS

Worcester, ss.

**LS**

| | Superior Court |
|---|---|
| | **Department of the Trial Court** |
| | **of the Commonwealth** |
| | **Civil Action** |
| | No. ) 02-2218A |

THOMAS MULHERN, INDIVIDUALLY AND ON
BEHALF OF A CLASS OF ALL PERSONS AND
ENTITIES SIMILARLY SITUATED

                                 **Plaintiff (s)**

                    **v.**

JOHN G. MACLEAOD D/B/A ABC MORTGAGE
COMPANY                         **Defendant (s)**

                  **SUMMONS**

**To the above-named Defendant:**

    You are hereby summoned and required to serve upon Edward A. Broderick, Esq. of Shlansky & Broderick, LLP, plaintiff's attorney, whose address is 1011 Beacon Street, Suite 2, Brookline, Massachusetts an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the SUPERIOR COURT Department of the Trial Court at WORCESTER either before service upon plaintiff's attorney or within a reasonable time thereafter.

    Unless otherwise provided by Rule 13 (a), your answer must state as a counter-claim any claim which you may have against the plaintiff which arises out of the transaction of occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

    Witness, Robert A. Mulligan, Esquire, at Worcester, the 24th day of October in the year of our Lord one thousand nine hundred and ninety two

A TRUE COPY, ATTEST

DEPUTY SHERIFF

DATE 10-8/02

                    **Clerk**

<div style="writing-mode: vertical-rl">NOTICE TO DEFENDANT: You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein AND also file the original in the Clerk's Office, Superior Court, Room 21.</div>

**NOTES:**
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

PLEASE CIRCLE TYPE OF ACTION INVOLVED: TORT — MOTOR VEHICLE TORT —
CONTRACT EQUITABLE RELIEF — CH. 93A — MEDICAL MALPRACTICE — OTHER.

L1H-3/31/2003 1:07:47 PM

**PROOF OF SERVICE OF PROCESS**

I hereby certify and return that on ...............................................................................................

19    , I served a copy of the within summons, together with a copy of the complaint in this action, upon

the within-named defendant, in the following manner (See Mass. R. Civ. P 4(d) (1-5):

...............................................................................................................................................................

...............................................................................................................................................................

...............................................................................................................................................................

Dated:                          , 19        .


**N.B. TO PROCESS SERVER:**

PLEASE PLACE **DATE** YOU MAKE SERVICE ON DEFENDANT IN THIS BOX

**ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

| , 19 |
| --- |

**COMMONWEALTH OF MASSACHUSETTS**

Worcester, ss.        **Superior Court**  02-2218A
                      **Civil Action**

THOMAS MULHERN, individually and on behalf of
a class of all persons No.
and entities similarly situated

................................... **Plaintiff**

v.

JOHN G. MACLEOD D/B/A ABC MORTGAE COMPANY

................................... **Defendant**

**SUMMONS**

(Mass. R. Civ. P. 4)

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 02-2218 | Trial Court of Massachusetts Superior Court Department County: Worcester |
|---|---|---|

| PLAINTIFF(S) Thomas Mulhern | DEFENDANT(S) John G. MacLeod d/b/a ABC Mortgage Company |
|---|---|
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Matthew P. McCue, Esq. Mirick, O'Connell, DeMallie & Lougee, LLP 100 Front St., Worcester, MA 01608 Board of Bar Overseers number: 565319 | ATTORNEY (if known) |

**Origin code and track designation**

Place an x in one box only:
- [x] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B99 | Consumer Class Action ( F ) | | (X ) Yes    ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ............................................. $...........
2. Total Doctor expenses ............................................. $...........
3. Total chiropractic expenses ............................................. $...........
4. Total physical therapy expenses ............................................. $...........
5. Total other expenses (describe) ............................................. 
   Subtotal $...........
B. Documented lost wages and compensation to date ............................................. $...........
C. Documented property damages to date ............................................. $...........
D. Reasonably anticipated future medical and hospital expenses ............................................. $...........
E. Reasonably anticipated lost wages ............................................. $...........
F. Other documented items of damages (describe)
   $...........
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

   $...........
   TOTAL $...........

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s): The Defendant has engaged in widespread illegal facsimile telemarketing in violation of the Telephone Consumer Protection Act. The class is entitled to statutory damages of at least $500.00 for each violation.

TOTAL $. ...........

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____    DATE: 10/16/0

AOTC-6 mtc005-11/90
A.O.S.C. 1-2000

L1H-3/31/2003 1:07:47 PM

# Commonwealth of Massachusetts
## County of Worcester
### The Superior Court

CIVIL DOCKET # WOCV2002-02218

RE:   Mulhern v MacLeod

TO: Edward A Broderick, Esquire
      Shlansky & Broderick
      1011 Beacon Street
      Brookline, MA 02446

### TRACKING ORDER - F TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 01/14/2003 |
| Response to the complaint filed (also see MRCP 12) | 03/15/2003 |
| All motions under MRCP 12, 19, and 20 filed | 03/15/2003 |
| All motions under MRCP 15 filed | 03/15/2003 |
| All discovery requests and depositions completed | 08/12/2003 |
| All motions under MRCP 56 filed and heard | 09/11/2003 |
| Final pre-trial conference held and/or firm trial date set | 10/11/2003 |
| Case disposed | 12/10/2003 |

**The final pre-trial deadline is not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session A sitting in **Rm 12 (Session A)  Worcester Superior Court.**

Dated: 10/21/2002

Corinne L. Gorman,
Clerk of Courts

BY:

Joanne C. Herring
Assistant Clerk

Location: Rm 12 (Session A)
Telephone: 508-770-1899, Ext. 181 or Ext. 121 (Session Clerk)

*Check website as to status of case: http://ma-trialcourts.org/tcic*

cvdtrack_2.wpd 903604 inidoc01 rodrigue

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
WORCESTER DIVISION
CIVIL ACTION NO. 02-2218

THOMAS MULHERN
    Plaintiff, Individually And On Behalf
    Of A Class Of All Persons and Entities
    Similarly Situated

V.

JOHN G. MACLEOD D/B/A ABC
MORTGAGE COMPANY,
    Defendant

COMPLAINT – CLASS ACTION

**RECEIVED**

OCT 1 6 2002

CLERK OF COURTS
WORCESTER COUNTY

Plaintiff, Thomas Mulhern, individually and on behalf of all persons and entities similarly situated, files this complaint against defendant John G. MacLeod d/b/a ABC Mortgage Company.

### THE PARTIES

1.    Thomas Mulhern at all times relevant to this Complaint was a resident of Shrewsbury, County of Worcester, Massachusetts ("Mr. Mulhern" or "Plaintiff").

2.    John MacLeod, d/b/a ABC Mortgage Company ("ABC Mortgage") has a principal place of business in Braintree, County of Norfolk, Massachusetts.

3.    At all relevant times, ABC Mortgage transacted business in the Commonwealth, solicited business in the Commonwealth, engaged in a persistent course of conduct in the Commonwealth, or has derived substantial revenue from services rendered in the Commonwealth.

## THE LEGAL BASIS OF THE CLASS CLAIMS

4.     This class action arises from the repeated violation by ABC Mortgage of federal law prohibiting privacy violations via invasive telemarketing practices.

5.     The claims of Mr. Mulhern and the class of persons represented by Mr. Mulhern arise pursuant to the provisions of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), a federal statute enacted by Congress in 1991 prohibiting unreasonable invasions of privacy via certain telemarketing practices.

6.     One of the express provisions of the TCPA prohibits the use of a facsimile machine to send unsolicited advertisements for goods and services.

7.     The TCPA, 42 U.S.C. §227(b)(3) further provides a private right of action in state court, as follows:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State, (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receiver $500 in damages for each violation, whichever is greater, or (C) both such actions.

8.     The federal regulations implementing the TCPA similarly provide that no person may "[u]se a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 C.F.R. §64.1200(a)(3).

9.     Mr. Mulhern brings this action individually and as the representative of all members of a class pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure.

## FACTUAL ALLEGATIONS AS TO THE REPRESENTATIVE PLAINTIFF

10.     On December 26, 2000, ABC Mortgage transmitted an unsolicited facsimile advertisement to Mr. Mulhern. A copy of the fax is attached at Tab A.

11. On January 8, 2001, ABC Mortgage transmitted an unsolicited facsimile advertisement to Mr. Mulhern. A copy of the fax is attached at Tab B.

12. On January 23, 2001, ABC Mortgage transmitted an unsolicited facsimile advertisement to Mr. Mulhern. A copy of the fax is attached at Tab C.

13. On January 25, 2001, Mr. Mulhern wrote to ABC Mortgage and informed it that its repeated conduct in transmitting to him unsolicited facsimile advertisements constituted violations of both the TCPA and the Massachusetts Consumer Protection Act, G.L. c. 93A. A copy of Mr. Mulhern's demand letter and proof of receipt (January 30, 2001) is attached at Tab D.

14. ABC Mortgage failed to respond to Mr. Mulhern's demand and failed to stop transmitting unsolicited facsimile advertisements to Mr. Mulhern.

15. On February 5, 2001, ABC Mortgage transmitted an unsolicited facsimile advertisement to Mr. Mulhern. A copy of the fax is attached at Tab E.

16. On February 15, 2001, ABC Mortgage transmitted an unsolicited facsimile advertisement to Mr. Mulhern. A copy of the fax is attached at Tab F.

17. On March 29, 2001, ABC Mortgage transmitted an unsolicited facsimile advertisement to Mr. Mulhern. A copy of the fax is attached at Tab G.

18. On April 30, 2001, ABC Mortgage transmitted an unsolicited facsimile advertisement to Mr. Mulhern. A copy of the fax is attached at Tab H.

19. On May 22, 2001, ABC Mortgage transmitted an unsolicited facsimile advertisement to Mr. Mulhern. A copy of the fax is attached at Tab I.

20. On June 13, 2001, ABC Mortgage transmitted an unsolicited facsimile advertisement to Mr. Mulhern. A copy of the fax is attached at Tab J.

21.    On September 27, 2001, ABC Mortgage transmitted an unsolicited facsimile advertisement to Mr. Mulhern.  A copy of the fax is attached at Tab K.

22.    On November 9, 2001, ABC Mortgage transmitted an unsolicited facsimile advertisement to Mr. Mulhern.  A copy of the fax is attached at Tab L.

23.    On December 4, 2001, ABC Mortgage transmitted an unsolicited facsimile advertisement to Mr. Mulhern.  A copy of the fax is attached at Tab M.

24.    On December 17, 2001, ABC Mortgage transmitted an unsolicited facsimile advertisement to Mr. Mulhern.  A copy of the fax is attached at Tab N.

25.    On January 7, 2002, ABC Mortgage transmitted an unsolicited facsimile advertisement to Mr. Mulhern.  A copy of the fax is attached at Tab O.

26.    On January 28, 2002, ABC Mortgage transmitted an unsolicited facsimile advertisement to Mr. Mulhern.  A copy of the fax is attached at Tab P.

27.    ABC Mortgage did not obtain the consent of Mr. Mulhern prior to transmitting any facsimile advertisements to his home.

28.    Upon information and belief, over the past several years, ABC Mortgage has engaged in widespread advertising via unsolicited facsimile transmission in violation of the TCPA.

29.    Upon information and belief, over the past several years, ABC Mortgage has transmitted unsolicited facsimile advertisements to thousands of residents of the Commonwealth of Massachusetts.

30.    Upon information and belief, ABC does not obtain the consent of facsimile recipients prior to the transmission of facsimile advertisements.

## CLASS ALLEGATIONS

31.    The Plaintiff brings this action pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure on behalf of a class of all other persons or entities similarly situated.

32.    The class of persons represented by Mr. Mulhern is composed of all persons or entities within Massachusetts to whom ABC Mortgage sent, or caused to be sent, one or more unsolicited facsimile advertisements promoting ABC Mortgage and its services, sent on or after October 17, 1998.

33.    Excluded from the Plaintiff Class are the defendant, its employees, any judge or justice assigned to hear any aspect of this litigation, any spouse or relative of such judge or justice within the third degree of relationship, or the spouse of any such person.

34.    The class as defined above is identifiable by phone records, fax transmittal records and fax number database.  On information and belief, the potential class members number in the thousands and constitute a class so numerous that joinder of all class members is impracticable.  Mr. Mulhern is a member of the class.

35.    There are questions of law and fact common to Mr. Mulhern and to the proposed class, including but not limited to the following:

a.    Whether ABC Mortgage violated the TCPA, FCC promulgating regulations, by engaging in unsolicited fax advertising.

b.    Whether the facsimiles sent by ABC Mortgage to class members constitute unsolicited advertisements;

c.    Whether the Plaintiff and the members of the class are entitled to statutory damages as a result of ABC Mortgage's actions.

36.    Mr. Mulhern's claims are typical of the claims of the class.

37.     Mr. Mulhern is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions.

38.     The actions of ABC Mortgage are generally applicable to the class as a whole and to Mr. Mulhern.

39.     Common questions of law and fact predominate over questions affecting only individual members of the class and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by ABC Mortgage and/or its agents.

40.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

41.     Mr. Mulhern is unaware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above. Mr. Mulhern is capable of and is willing to represent the other members of the class.


## COUNT I: VIOLATION OF THE TCPA
## SENDING UNSOLICITED FAX ADVERTISEMENTS

42.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

43.     ABC Mortgage, or its agents, negligently caused facsimile advertisements to be sent to Mr. Mulhern's telephone facsimile machine, and to the facsimile machines of other members of the class, in violation of the TCPA and the FCC's promulgating regulations.

44.     The TCPA provides for statutory damages in the amount of a minimum of $500 for each violation of the TCPA.

## COUNT II: INJUNCTIVE RELIEF
## TO BAR FUTURE TCPA VIOLATIONS

45.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

46.     The TCPA expressly authorizes injunctive relief to prevent further violations of Telephone Consumer Protection Act.

47.     The Plaintiff, acting on behalf of the Class, respectfully petitions this Court to order ABC Mortgage to immediately cease engaging in unsolicited facsimile advertising in violation of the TCPA.

## COUNT III: INJUNCTIVE RELIEF
## PRESERVATION OF EVIDENCE

48.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

49.     ABC Mortgage, or its agents, has custody and control of the business records and other information necessary to identify the members of the class including names and telephone facsimile numbers.  Unless immediate injunctive relief is ordered, it is feared that ABC Mortgage, or its agents, will alter, erase, delete, destroy or otherwise dispose of the records in their possession which are necessary to identify each recipient of the unsolicited facsimile advertisements being sent by defendants. For this reason, the Plaintiff petitions the Court for an order enjoining ABC Mortgage, its agents, or anyone acting on its behalf, from altering, deleting or destroying any documents or records which could be used to identify the members of the class.

## PRAYER FOR RELIEF

WHEREFORE, on behalf of himself and the other members of the class, the Plaintiff prays for the following relief:

1. That ABC Mortgage immediately be restrained from engaging in future telemarketing in violation of the TCPA.

2. That ABC Mortgage, its agents, or anyone acting on its behalf, be immediately restrained from altering, deleting or destroying any documents or records which could be used to identify the members of the class.

3. That this Court certify the claims of the named plaintiff and all other persons similarly situated as class action claims as provided by Rule 23 of the Massachusetts Rules of Civil Procedure.

4. That the named plaintiff and the other members of the class action so certified be awarded statutory damages for each separate violation of the TCPA by ABC Mortgage.

5. That the Court enter an appropriate order enjoining ABC Mortgage, its agents, or anyone acting on its behalf, from altering, erasing, changing, deleting, destroying or otherwise disposing of any records, including computer disks or computer programs, in its possession or control which can be used to identify all persons, corporations, or other entities to whom defendants have transmitted unsolicited facsimile advertisements.

7. That the named plaintiff and the members of the class be granted such other and further relief as is just and equitable under the circumstances.

**THE CLASS PLAINTIFF REQUESTS A JURY TRIAL AS TO ALL CLAIMS OF THE COMPLAINT SO TRIABLE**

THOMAS MULHERN

By his Attorneys,

Edward A. Broderick,
BBO # 566826
SHLANSKY & BRODERICK, LLP
1011 Beacon Street, Suite 2
Brookline, MA 02446
Phone (617) 738-7080
Fax:  (617) 738-5003

Matthew P. McCue, Esq.
BBO #565319
MIRICK, O'CONNELL
DEMALLIE & LOUGEE, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax:    (508) 791-8502

Date:  October 6, 2002



*223 F.Supp.2d 744
(Cite as: 223 F.Supp.2d 744)
C

Page 2

United States District Court,
M.D. North Carolina.

PRIME TV, LLC, Plaintiff,
v.
TRAVELERS INSURANCE CO.; and Travelers
Property Casualty Insurance Company, a
Member of The Travelers Group, Defendants.

No. 1:01CV00952.

Aug. 7, 2002.

Insured satellite television services marketer brought state court action against commercial general liability (CGL) insurers, seeking declaration that insurers had duty to defend underlying actions against insured for allegedly violating consumer protection laws and alleging breach of contract, unfair and deceptive trade practices, bad faith and unfair dealings, and breach of fiduciary duty. Action was removed. On insured's motions for partial judgment on the pleadings and insurers' motion for judgment on the pleadings, the District Court, Bullock, J., held that: (1) insured's act of faxing allegedly unsolicited advertisements to recipients, in violation of consumer protection law, constituted "property damage" within meaning of CGL policies; (2) although insured allegedly intentionally requested unsolicited advertisements to be faxed to recipients in violation of consumer protection law, such request was not intentional act made with intent to cause "property damage," and thus, "property damage," arising from facsimiles, was result of "occurrence" as defined by policies; and (3) insured's act of faxing allegedly unsolicited advertisements was covered "advertising injury" within meaning of policies.

Plaintiff's motion granted.

West Headnotes

[1] Federal Civil Procedure ☞2501
170Ak2501 Most Cited Cases

Under North Carolina law, construction and application of insurance policy provisions is a question of law appropriate for summary disposition.

[2] Insurance ☞1813
217k1813 Most Cited Cases

As in other contracts, aim of construction of insurance policy terms, under North Carolina law, is to arrive at intent of the parties when policy was issued, and such intent must be found in language used by the parties to policy.

[3] Insurance ☞1822
217k1822 Most Cited Cases

[3] Insurance ☞1824
217k1824 Most Cited Cases

In construing insurance policy under North Carolina law, where policy defines a term, that definition is to be used, and if no definition is given, non-technical words are to be given their meaning in ordinary speech, unless context clearly indicates another meaning was intended.

[4] Insurance ☞1832(1)
217k1832(1) Most Cited Cases

Because insurance company drafts policy terms, any ambiguity as to their meaning must be resolved in favor of policyholder, when construing policy under North Carolina law.

[5] Insurance ☞1836
217k1836 Most Cited Cases

In construing provisions of insurance policy under North Carolina law, wherever possible policy will be interpreted in manner which gives, but never takes away, coverage.

[6] Insurance ☞1808
217k1808 Most Cited Cases

In construing insurance policy under North Carolina law, ambiguity does not exist in insurance policy by virtue of fact that insured asserts construction contrary to construction offered by insurance company; rather ambiguity will exist only if in opinion of court, language of policy is fairly and reasonably susceptible to either of the constructions for which the parties contend.

[7] Insurance ☞2913

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

217k2913 Most Cited Cases

Under North Carolina law, insurer's duty to defend the insured is broader than its obligation to indemnify the insured.

[8] Insurance ⊛⟶2268
217k2268 Most Cited Cases

[8] Insurance ⊛⟶2914
217k2914 Most Cited Cases

Under North Carolina law, insurer's duty to defend is ordinarily measured by facts as alleged in pleadings, whereas its duty to pay is measured by facts ultimately determined at trial.

[9] Insurance ⊛⟶2914
217k2914 Most Cited Cases

Where allegations in underlying complaint are arguably within coverage of insurance policy, there is corresponding duty to defend under North Carolina law.

[10] Insurance ⊛⟶2914
217k2914 Most Cited Cases

Under North Carolina law, when pleadings in underlying action state facts demonstrating that alleged injury is covered by insurance policy, then insurer has duty to defend, whether or not insured is ultimately liable.

[11] Insurance ⊛⟶2913
217k2913 Most Cited Cases

[11] Insurance ⊛⟶2914
217k2914 Most Cited Cases

To determine whether underlying actions are covered by provisions of insurance policies under North Carolina law, policy provisions must be analyzed, then compared with events as alleged; pleadings are read side-by-side with policy to determine whether events as alleged are covered or excluded.

[12] Insurance ⊛⟶2277
217k2277 Most Cited Cases

Insured satellite television services marketer's act of faxing allegedly unsolicited advertisements to recipients, in violation of consumer protection law, constituted "property damage" within meaning of commercial general liability (CGL) policies, which defined property damage to include "the loss of use of tangible property that is not physically injured"; as result of advertising facsimiles, recipients lost use of their fax machines, as well as permanent loss of facsimile paper and ink.

[13] Insurance ⊛⟶2275
217k2275 Most Cited Cases

Although insured satellite television services marketer allegedly intentionally requested unsolicited advertisements to be faxed to recipients in violation of consumer protection law, such request was not intentional act made with intent to cause "property damage," and thus, "property damage," arising from facsimiles, was result of "occurrence" as defined by commercial general liability policies under North Carolina law.

[14] Insurance ⊛⟶2914
217k2914 Most Cited Cases

[14] Insurance ⊛⟶2915
217k2915 Most Cited Cases

Under North Carolina law, insurer has affirmative duty to investigate alleged facts in underlying action, and where insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy, duty to defend is not dismissed because facts alleged in third-party complaint appear to be outside coverage, or within policy exception to coverage.

[15] Insurance ⊛⟶2300
217k2300 Most Cited Cases

[15] Insurance ⊛⟶2303(2)
217k2303(2) Most Cited Cases

Insured satellite television services marketer's act of faxing allegedly unsolicited advertisements to recipients, in violation of consumer protection law, was covered "advertising injury" within meaning of commercial general liability (CGL) policies under North Carolina law; facsimiles were sent in course of advertising insured's services, advertisements constituted "advertising injury" as defined by

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

policies, i.e., written publication of material that violated person's right of privacy, and, although insured intentionally requested the advertisements to be faxed, insured did not have knowledge of falsity of advertisements.

*746 Thomas M. Van Camp, Van Camp, Meacham & Newman, PLLC, Pinehurst, NC, for Plaintiff.

G. Michael Barnhill, Amy L. Cox Gruendel, Womble, Carlyle, Sandridge & Rice, PLLC, Charlotte, NC, William T. Crbett, Jr., Mark D. Sheridan, Drinker, Biddle & Shanley, LLP, Florham Park, NJ, for Defendants.

### MEMORANDUM OPINION

BULLOCK, District Judge.

Plaintiff, Prime TV, LLC, ("Plaintiff" or "Prime TV") originally filed this action in the General Court of Justice, Superior Court Division, Moore County, North Carolina, against Defendants Travelers Indemnity Company (incorrectly pled as Travelers Insurance Company) and Travelers Property Casualty Company (collectively "Defendants" or "Travelers"), seeking declaratory relief and alleging breach of contract, unfair and deceptive trade practices, bad faith and unfair dealings, and breach of fiduciary duty. Defendants removed to this court based on diversity of citizenship. Plaintiff asserts that Defendants failed to provide a defense and coverage *747 for numerous lawsuits filed against Plaintiff under the Telephone Consumer Protection Act ("TCPA").

Plaintiff and Defendants have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff's motion is limited to its claims for declaratory relief and breach of contract relating to Defendants' duty to defend. Defendants seek a declaration that they owe no duty to defend or indemnify Plaintiff in connection with the underlying lawsuits. For the following reasons, the court will grant Plaintiff's motion for judgment on the pleadings. Defendants' motion for judgment on the pleadings will be denied.

### FACTS

Plaintiff markets and sells satellite television services in its capacity as an independent contractor for DirecTV. In January and February 2001,

Plaintiff commenced discussions with various companies that specialized in faxed advertisements. These companies allegedly informed Plaintiff that these companies possessed lists of consumers, including their fax numbers, who desired information concerning satellite television services. Plaintiff alleges that the fax companies affirmatively represented to Plaintiff that the lists included only those individuals who had specifically requested information regarding the services provided by Plaintiff. These companies further represented to Plaintiff that they would fax any advertisement prepared by Plaintiff for a designated fee per fax. Based upon these representations, Plaintiff prepared an advertisement for DirecTV services and provided it to several fax companies. In February and March 2001, the faxes were sent to millions of potential customers. As a result of the faxes, Plaintiff was sued in numerous venues throughout the United States. Each of the lawsuits allege that Prime TV violated the TCPA by sending unsolicited facsimile advertisements. Some of the suits also allege state law claims for negligence, unfair trade practices, invasion of privacy, and trespass.

Plaintiff purchased a commercial general liability insurance policy from Defendants, which was effective from September 25, 2000, through September 25, 2001. The limit of liability under the policy is $2,000,000. Plaintiff also purchased a commercial excess liability insurance policy from Defendants, which was effective from September 25, 2000, through September 25, 2001. The limit of liability under the excess liability policy is $1,000,000. Plaintiff subsequently renewed these policies for the period from September 25, 2001, to January 1, 2002.

After the lawsuits were filed against Prime TV, Prime TV submitted the suit papers to Defendants and requested that Defendants provide a defense under the applicable insurance policies. After investigating the claims, Defendants refused to defend Plaintiff in the underlying actions or accept coverage.

Plaintiff contends that the policies cover the acts alleged in the underlying lawsuits, requiring Defendants to defend and indemnify Plaintiff in the lawsuits. Plaintiff asserts that the alleged acts are covered by the general liability policy under both Section I, Coverage A and Section I, Coverage B,

as well as the excess liability policy.

Under Coverage A, the general liability policy provides coverage for property damage and states as follows:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of ... 'property damage' to which this insurance applies. We will have the right and duty to defend *748 any 'suit' seeking those damages....

....

b. This insurance applies to ... 'property damage' only if:

(1) The ... 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory';....

Policy Number I-680-371D839-IND-00, Coverage Form CG 00 01 10 93 at 1 (attached to Compl. at Ex. G) (hereinafter General Liability Policy). The policy excludes coverage for "property damage expected or intended from the standpoint of the insured." *Id.* The policy contains the following relevant definitions:

12. 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

....

15. 'Property damage' means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

*Id.* at 10-11. The policy does not define "accident."

Under Coverage B, the policy provides coverage for advertising injury liability and states as follows:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of ... 'advertising injury' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages....

....

b. This insurance applies to:

....

(2) 'Advertising injury' caused by an offense committed in the course of advertising your goods,

products or services;....

*Id.* at 4. The policy contains the following relevant definitions:

1. 'Advertising injury' means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

*Id.* at 9. The policy does not define the term "right of privacy." Finally, the policy excludes coverage for "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;....

*Id.* at 4. The extended liability policy provides similar coverages, including coverage for property damage and advertising injury.

### DISCUSSION

Plaintiff and Defendants have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). In considering a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), this court must view facts presented in the pleadings and the inferences drawn therefrom in the light most favorable to the non-moving party. 5A *749 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure Civil 2d* § 1368 at 590 (Supp.2002). A motion for judgment on the pleadings is determined by the same standard applied to a motion to dismiss for failure to state a claim. *See Irish Lesbian & Gay Org. v. Giuliani,* 143 F.3d 638, 644 (2d Cir.1998); *Pledger v. North Carolina Dep't of Health & Human Servs., Dorothea Dix Hosp.,* 7 F.Supp.2d 705, 707 (E.D.N.C.1998). Thus, judgment on the pleadings is appropriate if, taking the non-moving party's allegations as true, the movant clearly establishes that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. *Eagle Nation, Inc. v. Market Force, Inc.,* 180 F.Supp.2d 752, 754 (E.D.N.C.2001).

A. *Canons of Construction and Legal Principles*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

[1] The issue before the court concerns the construction of the insurance policies, specifically whether the policies require Travelers to defend Prime TV in the underlying state court actions. Construction and application of insurance policy provisions is a question of law appropriate for summary disposition. *See Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1121 (4th Cir.1995) (citing *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.,* 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970)).

[2][3][4][5][6] North Carolina courts have outlined several principles of construction that guide courts in construing insurance policies. *See Wachovia,* 276 N.C. at 354, 172 S.E.2d at 522. As in other contracts, the aim of construction of policy terms is to arrive at the intent of the parties when the policy was issued. *See id.* This intent "must be found in the language used by the parties to the [policy]." *Duke v. Mutual Life Ins. Co. of N.Y.,* 286 N.C. 244, 247, 210 S.E.2d 187, 189 (1974). "Where a policy defines a term, that definition is to be used. If no definition is given, non- technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended." *Woods v. Nationwide Mutual Insurance Co.,* 295 N.C. 500, 505-06, 246 S.E.2d 773, 777 (1978). Because the insurance company drafts the policy terms, any ambiguity as to their meaning "must be resolved in favor of the policyholder." *Wachovia,* 276 N.C. at 354, 172 S.E.2d at 522. Furthermore, in construing the provisions of an insurance policy, wherever possible the policy will be interpreted in a manner which gives, but never takes away, coverage. *Nationwide Mut. Fire Ins. Co. v. Allen,* 68 N.C.App. 184, 190, 314 S.E.2d 552, 555 (1984). Nevertheless, an ambiguity does not exist by virtue of the fact that the insured asserts a construction contrary to the construction offered by the insurance company. *Wachovia,* 276 N.C. at 354, 172 S.E.2d at 522. An ambiguity will exist only if "in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend." *Id.* (citation omitted).

[7][8][9][10] An insurer's duty to defend the insured is broader than its obligation to indemnify the insured. *Waste Mgmt. of the Carolinas, Inc. v. Peerless Ins. Co.,* 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986). "An insurer's duty to defend is

ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by the facts ultimately determined at trial." *Id.* Furthermore, where the allegations are arguably within the coverage of the policy, there is a corresponding duty to defend. *Id.* at 691, n. 2, 340 S.E.2d at 377 n. 2 (stating that "pleadings that disclose a mere possibility that the insured is liable (and that the potential liability is covered) suffice to impose a duty to defend upon the insurer"). Thus, "[w]hen the pleadings *750 state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." *Id.* at 691, 340 S.E.2d at 377.

[11] In order to determine whether the underlying state actions are covered by the provisions of the Travelers policies, "the policy provisions must be analyzed, then compared with the events as alleged.... [T]he pleadings are read side-by-side with the policy to determine whether the events as alleged are covered or excluded." *Id.* at 693, 340 S.E.2d at 378. Thus, the arguments of the parties before the court must be assessed against these legal principles and canons of construction.

Prime TV contends that the underlying actions fall within the "property damage" and "advertising injury" coverage provided by the Travelers policies requiring Travelers to defend Prime TV in the underlying actions. Travelers, on the other hand, argues that it owes no duty to defend or indemnify Prime TV in connection with the underlying lawsuits.

B. *"Property Damage" Coverage*

[12] The Travelers policies provide coverage for "property damage" if "[t]he 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.' " (General Liability Policy at 1 .) "Property damage" is defined by the Travelers policies to include "the loss of use of tangible property that is not physically injured." (*Id.* at 11.) "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [FN1] (*Id.* at 10.) Thus, to prevail on its claim that Travelers is obligated to defend Prime TV in connection with the underlying actions, Prime TV must establish the possibility:    (1) that the injury alleged in the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

underlying actions constitutes "property damage" as defined in the Travelers policies; and (2) that such "property damage" is the result of an "occurrence" as that term is defined in the Travelers policies.

> FN1. The Travelers policies do not define the term "accident."

The act of faxing DirecTV advertisements to the recipients constituted "property damage" as defined by the Travelers policies. In the underlying actions, Prime TV is being sued under the TCPA. The legislative history of the TCPA identifies two problems associated with unsolicited facsimile advertising:

'First, it shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax.... [T]he recipient assumes both the cost associated with the use of the facsimile machine, and the cost of the expensive paper used to print out facsimile messages.'

*Destination Ventures, Ltd. v. FCC*, 844 F.Supp. 632, 636 (D.Or.1994) (quoting H.R.Rep. No. 102-317, at 5, *reprinted in 14082 U.S. Congressional Serial Set*, 102d Cong.1st Sess. 10, 25 (1991), *aff'd* 46 F.3d 54 (9th Cir.1995)); *see also Lewis v. Gitt*, No. CIV.A. 97-7216, 1998 WL 334235, at *2 (E.D.Pa. June 22, 1998) (quoting same). Thus, as a result of the DirecTV facsimiles, the recipients lost the use of their fax machines as well as permanent loss of facsimile paper and ink. [FN2]

> FN2. Even assuming *arguendo* that the faxing of the DirecTV advertisements did not constitute "property damage," Defendants conceded this point by not addressing it in their briefs.

[13] Despite Defendants' argument otherwise, the "property damage" was also the result of an "occurrence" as defined by *751 the Travelers policies. Defendants argue that Plaintiff intentionally caused the property damage, and therefore it was not the result of an "occurrence." Defendants further contend that: "It is hornbook law in North Carolina that to determine coverage, the underlying *complaint* must be 'read side-by-side with the policy to determine whether the events as alleged are covered or excluded.' " (Travelers Mem. of Law in Reply to Pl.'s Resp. to Defs.' Cross-Motion for J.

on the Pldgs. at 2 (emphasis added) (quoting *Waste Mgmt.*, 315 N.C. at 693, 340 S.E.2d at 377)). Defendants further contend that because the underlying complaints allege that Prime TV acted intentionally and that it "willfully and knowingly" violated the TCPA the court need not look to Prime TV's responsive pleadings. Defendants' argument, however, is inapposite to North Carolina case law.

[14] In order to determine whether the underlying state actions are covered by the provisions of the Travelers policies, "the *pleadings* are read side-by-side with the policy to determine whether the events as alleged are covered or excluded." *Waste Mgmt.*, 315 N.C. at 693, 340 S.E.2d at 378 (emphasis added). "An insurer's duty to defend is ordinarily measured by the facts in the *pleadings*." *Id.* at 691, 340 S.E.2d at 377 (emphasis added). Furthermore, an insurer has an affirmative duty to investigate the alleged facts.

Where the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy, the duty to defend is not dismissed because the facts alleged in a third-party complaint appear to be outside coverage, or within a policy exception to coverage.... [M]any jurisdictions have recognized that the modern acceptance of notice pleading and of the plasticity of pleadings in general imposes upon the insurer a duty to investigate and evaluate facts expressed or implied in the third-party complaint as well as facts learned from the insured and from other sources.

*Id.* at 691-92, 340 S.E.2d at 377-78. Thus, rather than accepting the underlying plaintiffs' allegations that Prime TV intentionally violated the TCPA as true and determining that DirecTV facsimiles were not covered under the Travelers policies, Travelers had a duty to investigate the facts alleged in the underlying complaints and facts alleged by Prime TV. [FN3]

> FN3. Prime TV denies that it violated the TCPA and asserts that the facsimiles were sent only to those individuals and entities that requested or solicited information regarding Prime TV services.

The intent component of the "occurrence" analysis requires a subjective inquiry. *See id.* at 696, 340 S.E.2d at 380 ("Whether events are 'accidental' and constitute an 'occurrence' depends upon whether they were expected or intended from the point of view of the insured."). Under the Travelers policies, "occurrence" is defined as "an accident,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

including continuous or repeated exposure to substantially the same general harmful conditions." (General Liability Policy at 10.) Where insurance policies fail to define "accident," such as the Travelers policies, the North Carolina Supreme Court has defined it as " 'an event that takes place without one's foresight or expectation; and [sic] undesigned, sudden, and unexpected event; chance; contingency.' " *North Carolina Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 708, 412 S.E.2d 318, 325 (1992) (quoting *Iowa Mut. Ins. Co. v. Fred M. Simmons, Inc.*, 258 N.C. 69, 74, 128 S.E.2d 19, 22 (1962)). "Even intentional acts, the consequences of which are unexpected, have been held to qualify as 'occurrences'." *Waste Mgmt.*, 315 N.C. at 695, 340 S.E.2d at 379; *see also Stox*, 330 N.C. at 709, 412 *752 S.E.2d at 318 (concluding that "where the term 'accident' is not specifically defined in an insurance policy, that term *does* include injury resulting from an intentional act, if the injury is not intentional or substantially certain to be the result of the intentional act").

Although the fax companies intentionally sent the facsimiles to the recipients, as ordered by Prime TV, Prime TV believed that the recipients requested the information regarding Prime TV's services. Therefore, although Prime TV intentionally requested the advertisements to be faxed, such a request is not an intentional act made with the intent to cause property damage. Thus, the "property damage" was the result of an "occurrence" as defined by the Travelers policies and Defendants have a duty to defend Plaintiff in the underlying state actions. *See York Indus. Ctr., Inc. v. Michigan Mut. Liab. Co.*, 271 N.C. 158, 155 S.E.2d 501 (1967) (holding that the intentional felling of trees belonging to another was an "occurrence" where it was done in the mistaken belief, induced by a surveyor's error in locating the property line, that the trees were on the plaintiff's property). [FN4]

FN4. Despite Defendants' argument that the definition of "occurrence" in *York Indus. Ctr., Inc. v. Michigan Mut. Liability Co.* is broader than "occurrence" as defined in the Travelers policies, the court finds otherwise. "Occurrence" as defined by the policy in *York Indus. Ctr.* means "an unexpected event or happening or a continuous or repeated exposure to conditions which results during the policy period in ... injury to or destruction of property ... provided the insured did not intend that

injury ... or destruction would result." 271 N.C. 158, 159, 155 S.E.2d 501, 503 (1967). This definition of "occurrence" is nearly identical to "occurrence" as defined by the Travelers policies and "accident" as defined by the North Carolina Supreme Court.

## C. *"Advertising Injury" Coverage*

[15] Even assuming *arguendo* that the underlying state actions do not fall under the "property damage" coverage of the Travelers policies, the act of faxing DirecTV advertisements to the recipients is covered under the "advertising injury" liability section in the Travelers policies. Thus, Travelers has a duty to defend Prime TV in the underlying state actions.

The Travelers policies provide coverage for " 'advertising injury' caused by an offense committed in the course of advertising [Prime TV's] goods, products or services." (General Liability Policy at 4.) "Advertising injury" is defined by the Travelers policies to include "oral or written publication of material that violates a person's right of privacy." (*Id.* at 9) The policy, however, excludes coverage for "advertising injury" "arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." (*Id.* at 4.)

The act of faxing DirecTV advertisements to the recipients constitutes "advertising injury" as defined by the Travelers policies. First, the DirecTV facsimiles were sent in the course of advertising Prime TV's services. Prime TV markets and sells satellite television services in its capacity as an independent contractor for DirecTV. Second, the DirecTV advertisements constitute "advertising injury" as defined by the Travelers policies, that is a "written publication of material that violates a person's right of privacy." [FN5] (*Id.* at 9.) The underlying actions seek redress for the invasion of privacy rights (as well as the loss of use of property) under the TCPA. "The TCPA was enacted to 'protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls *753 to the home and to facilitate interstate commerce by restricting certain uses of facsimile ( [f]ax) machines and automatic dialers.' " *International Sci. and Tech. Inst., Inc. v. Inacom Communications, Inc.*, 106 F.3d 1146, 1150 (4th Cir.1997) (quoting *S.Rep. No. 102-178*, at 1 (1991), *reprinted in* 1991 U.S.C.C.A.N.1968).

Finally, as discussed above, although the fax companies intentionally sent the facsimiles to the recipients, as ordered by Prime TV, Prime TV believed that the recipients requested the information regarding Prime TV's services. Therefore, although Prime TV intentionally requested the advertisements to be faxed, Prime TV did not "have knowledge of [their] falsity." (*See* General Liability Policy at 4.)

    FN5. Travelers failed to define the offense of "oral or written publication of material that violates a person's right of privacy."

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings will be granted. Because Plaintiff's motion is limited to its claims for declaratory relief and breach of contract relating to Defendants' duty to defend, the court need not address whether Defendants have a duty to indemnify Plaintiff in the underlying actions at this time. However, Defendants' motion for judgment on the pleadings will be denied.

  An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

223 F.Supp.2d 744

END OF DOCUMENT .

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



MELICK, PORTER & SHEA, LLP
28 State Street
Boston, Massachusetts 02109

TO:

Charles Buchanan
Senior Claims Representative
Scottsdale Insurance Co.
P.O. Box 4120
Scottsdale, AZ 85261-4120