UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ABC MORTGAGE CORPORATION
f/k/a JOHN G. MACLEOD
d/b/a ABC MORTGAGE COMPANY,

           Plaintiff

v.                                                                                     Civil Action No. 04-10816-MLW

SCOTTSDALE INSURANCE COMPANY,

           Defendant

## DEFENDANT SCOTTSDALE INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO BIFURCATE THE CHAPTER 93A CLAIM AND STAY DISCOVERY

Pursuant to Fed. R. Civ. P. 42(b) and the inherent power of this Court, Scottsdale Insurance Company ("SIC") is filing this memorandum of law in support of its motion to bifurcate the Chapter 93A claim (Count III) from the remaining counts in the complaint, Count I (Declaratory Judgment) and Count II (Breach of Contract), and to stay all discovery pending resolution of SIC's pending summary judgment motion.

## BACKGROUND

On or about October 21, 2002, Thomas Mulhern, individually and on behalf of a class of persons and entities similarly situated, filed suit against John G. MacLeod d/b/a ABC Mortgage ("MacLeod") in Worcester Superior Court, C.A. No. 02-2218 ("Mulhern Action"). The complaint alleged that MacLeod violated the Telephone Consumer Protection Act, 47 U.S.C. §227 and sought class certification pursuant to Mass. R. Civ. P. 23. In effect, the plaintiff in the Mulhern Action sought damages for so-called "fax blasting." On information and belief, the motion for class certification is pending. A copy of the Complaint in the Mulhern Action is attached as Exhibit 1.

On or about November 12, 2002, Mulhern sought a defense and indemnity from SIC under a Commercial General Liability Form which is part of SIC policy number CPS0394681.

52816.1

A copy of that policy is attached as Exhibit 2. In a letter dated December 3, 2002, SIC denied coverage for the claim. A copy of the coverage denial letter is attached as Exhibit 3. After that timely denial of coverage, Mulhern, through counsel sought on repeated occasions to get SIC to change its coverage position. Those attempts were unsuccessful, resulting in ABC Mortgage Corporation f/k/a John G. MacLeod d/b/a ABC Mortgage filing a complaint against SIC in Norfolk Superior Court, C.A. No.: NOCV 2004-00558 on April 1, 2004. A copy of the Complaint is attached as Exhibit 4. The action was subsequently removed to Federal Court. The Complaint contained three counts: Count I (Declaratory Judgment); Count II (Breach of Contract); and Count III (Violation of G.L. c.93A). With respect to Count III, ABC Mortgage Corporation ("ABC") bases the Chapter 93A claim on alleged violations of G.L. c. 176D, §3(9).

### ABC'S DISCOVERY TO SIC

On November 8, 2005, ABC served a request for production of documents and interrogatories upon SIC. In addition, it noticed the Rule 30(b)(6) deposition of SIC. Copies of the written discovery and deposition notice are attached as Exhibit 5. Thereafter, the parties agreed to discuss case resolution before proceeding with the discovery. Those discussions failed for a number of reasons, the most important of which is quite simple -- namely, based upon the allegations in the Mulhern complaint, it is clear that SIC has no obligation to defend or indemnify ABC or anyone else with respect to the Mulhern Action.

### ARGUMENT

**The Law**

Bifurcation and staying discovery will promote judicial economy and ensure that SIC will not be prejudiced by the inclusion of ABC's Chapter 93A claim in the instant litigation. Rule 42(b) of the Federal Rules of Civil Procedure provides as follows:

> The court, after a hearing, in furtherance of convenience or **to avoid prejudice, or when separate trials will be conducive to expedition and judicial economy**, may order a separate trial of any claim,

2

52816.1

> cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, or third-party claims, or issues, always preserving inviolate the right to trial by jury. . . .

Fed. R. Civ. P. 42(b) (2004) (emphasis added). Courts have broad discretion to bifurcate discovery and trial when any of the rationales for bifurcation under Rule 42(b) are satisfied. Easton v. City of Boulder, Colo., 776 F.2d 1441 (10th Cir. 1985). Rule 42(b) provides a trial court with "virtually unlimited freedom to try the issues in whatever way trial conveniences requires." Wright & Miller Federal Practice and Procedure, § 2387 at 278 (1971). Bifurcation is particularly favored in insurance coverage litigation where, as here, the insured (i.e., the plaintiff) has joined tort allegations of bad faith (i.e., violation of Chapter 93A) to contract claims for coverage under the policy. See, e.g., O'Malley v. U.S. Fidelity & Guaranty Co., 776 F.2d 494, 500-01 (5th Cir. 1985). Moreover, trial courts have broad discretion and inherent power to stay discovery pending the resolution of preliminary questions which may be dispositive of the entire case. Gettins v. Bldg Laborers Local 310 Fringe Bens Fund, 349 F.3d 300, 304 (6th Cir. 1999); Hahn v. Star Bank, 190 F.3d 708, 719 (6th Cir. 1999). Courts have done this in insurance coverage actions involving bad faith claims. See, e.g., also Bartlett v. John Hancock Mutual Life Ins. Co., 538 A.2d 997, 1002 (R.I. 1988)(most practical resolution of discovery and prejudice problems when a bad-faith claim is combined in a single action with a breach-of-contract claim on the policy is that "trial justices, or motion-calendar judges who encounter this situation, exercise their authority pursuant to Rule 42(b) to sever the contract claim from the bad-faith claim and limit discovery to the contract claim until the claim is resolved in plaintiff's favor").

**Why this case warrants bifurcation and staying discovery**

In this case, bifurcation and staying discovery would accomplish the twin goal of avoiding prejudice and promoting judicial expediency and economy. It would protect SIC from having to disclose confidential or prejudicial evidence in the coverage action, when such evidence is related solely to the Chapter 93A claim. For example, some of the information

3

plaintiffs now seek includes documents and other information relating to the handling of the claim and the decision to deny coverage. That information only becomes relevant when and if the Court finds coverage under the policy. As discussed infra, if SIC prevails on the coverage claim, this information would never need to be the subject of discovery requests. Moreover, bifurcation could save the Court a substantial amount of judicial time and resources given that a determination of coverage is a prerequisite for finding a Chapter 93A violation. See below. Defendant's Chapter 93A claim will be rendered moot if this Court declares that SIC properly declined coverage for the Mulhern Action. Because the Chapter 93A claim is a secondary, dependent matter that will become irrelevant upon a finding that SIC properly declined coverage for Mulhern Action, bifurcation will further the convenience of the parties and foster judicial economy. If SIC prevails on coverage, this Court will never need to address the discovery and trial issues attendant to Chapter 93A claim.

In similar circumstances, federal and state courts have adopted the practice of bifurcation and staying discovery. See, e.g., O'Malley, 776 F.2d at 500-01 (holding that the District Court properly declined to hear a claim of bad faith after determining that there was no liability under the insurance policy); Providence Journal Co. v. The Travelers' Indemnity Co., 938 F. Supp. 1066, 1070, n.3 (D.R.I. 1996)(severing the claim alleging that the insurer refused in bad faith to perform under its insurance contract); South Hampton Refining Co. v. National Union Fire Ins. Co. of Pitts, Pa., 875 F. Supp. 382, 384 (E.D. Tex. 1995) ("In insurance coverage suits, a plaintiff's bad faith claims generally depend on the outcome of contractual coverage claims and are usually severed. . . . In this manner, the goals of Rule 42(b) will be achieved and this court and the parties will not waste valuable resources attending to claims which could be disposed of by a determination of the insurance coverage."); State Farm Fire & Casualty Co. v. Woods, 896 F. Supp. 658, 660 (E.D. Tex. 1995) (severing insured's counterclaim for punitive damages for gross negligence and fraud from the issue of liability in order to prevent prejudice to the insurer);

Aetna Casualty & Surety Co. v. Nationwide Mut. Ins. Co., 734 F. Supp. 204, 208 (W.D. Pa. 1989) (granting insurer's motion to sever and stay bad faith claims because of the "substantial risk of prejudice" that would result if the coverage and bad faith issues were joined). In Corrente v. Fitchburg Mut. Fire Ins. Co., 557 A.2d 859 (R.I. 1989), the court faced a complaint that contained a breach of contract claim and a bad faith claim. In reversing the lower court's refusal to sever the claims, the Supreme Court of Rhode Island held as follows:

> Since the burden of proof of a bad-faith claim is so formidable, we are of the opinion that whether or not a discovery issue is involved, it is inherently prejudicial for a trial justice to decline to sever that claim from a breach-of-contract claim as a matter of law, there is no question for the jury on the bad-faith-claim. In essence, unless the trial justice finds that the plaintiff is entitled to recover on the breach-of-contract. As a matter of law, there is no question for the jury on the bad-faith claim. Consequently[,] the trial justice erred in denying the motion to sever. We wish to make it very clear that issues of judicial economy do not warrant the trial of two such claims together.

557. A.2d at 862. See also Bartlett, 538 A.2d at 1002.

Resolving Count I (Declaratory Judgment) and Count II (Breach of Contract) of the Complaint involves relatively straightforward coverage issues. See SIC's pending motion for summary judgment and supporting memorandum. None of the information sought in discovery is relevant to the determination of those issues. Indeed, as the summary judgment motion and supporting papers indicate, making the coverage determination is straightforward – it involves reading the applicable policy provisions and applying those provisions to the facts described in the Mulhern complaint. Therefore, doing discovery on the breach of contract claim would be a waste of time and would sidetrack the parties from the real issue at hand – namely, whether coverage exists. Moreover, doing discovery on the Chapter 93A would expose the plaintiff to confidential information. Such exposure is not necessary unless and until a determination is made that coverage exists. Examples of confidential information which is now being sought in discovery, but which are irrelevant to the coverage determination, include the following:

5

(1) Documents relating to the investigation, analysis, evaluation and/or decision as to whether to assume a duty to defend the Mulhern action;

(2) All documents comprising, consisting or referring to claim manuals and/or other documents relating to the handling of claims that actually or allegedly involve or are in any related to coverage under the subject policy.

(3) The underwriting file relating to the policy at issue.

**The Chapter 93A Claim**

Because the court only needs the complaint and the policy to determine the coverage issues, bifurcating the Chapter 93A from the other claims and staying discussing is clearly warranted. What makes this request even more compelling, is that even if this court found coverage, there would still be no Chapter 93A violation. The Chapter 93A claim is a section 11 claim which, according to the Complaint, is based on alleged violations of G.L. c. 176D, §3(9). See Complaint at ¶37. However, "a violation of G.L. c. 176D, §3(9) . . . does not support a §11 action, i.e., business against business claim, under c. 93A." Spencer Press, Inc. v. Utica Mutual Ins. Co., 42 Mass. App. Ct. 631, 636 (1997). Moreover, even if such were not the case, the alleged violation of Chapter 93A/Chapter 176D did not cause the plaintiff any loss. Without such a loss, there can be no Chapter 93A claim. The Alan Corporation v. International Surplus Lines Insurance Company, 22 F.3d 339, 343, (1st Cir. 1994). See also Hershenow v. Enterprise Rent-A-Car Company of Boston, Inc., 445 Mass. 790 (2006) (no redress under G.L. c.93A, §9 "where no loss has occurred"). Here, there is no loss because Scottsdale has now agreed (1) to defend the Mulhern Action on a going forward basis up until the time the court declares no defense obligation exists, and (2) to reimburse the insured for all reasonable defense costs incurred to date in that action.

The plaintiff may attempt to argue that it indeed suffered damage relating to SIC's initial refusal to defend when it incurred attorney's fees to prosecute the declaratory judgment action

6

52816.1

and otherwise to get SIC pending resolution of the declaratory judgment action to agree to defend. Chapter 93A is not the proper vehicle to recover those fees. The common law allows a successful policyholder who is a party to a coverage action to recover its attorneys fees once it is determined that coverage exists. See, e.g., Hanover Insurance Co. v. Golden, 436 Mass. 584, 766 N.E.2d 838 (2002); Rubenstein v. Royal Insurance Co. of America, 429 Mass. 355, 708 N.E.2d 639 (1999). No discovery relating to bad faith is necessary. If the policyholder establishes coverage, it can recover attorney's fees, plain and simple. Therefore, the plaintiff's protestations about needing discovery to establish a Chapter 93A violation are illusory.

What the Chapter 93A claim really boils down to is that the plaintiff did not like SIC's original position that no coverage exists for the Mulhern Action and the initial decision not to defend. Ultimately, even if SIC's policy interpretation proves to be incorrect, it is not a violation of Chapter 93A. There is no Chapter 93A violation where an insurer "relie[s] upon a plausible, although ultimately incorrect, interpretation of its policy." Boston Symphony Orchestra, Inc. v. Commercial Union Insurance Co., 406 Mass. 7, 15 (1989). Here, that standard has clearly been met. The memorandum in support of SIC's summary judgment motion demonstrates that Court's have been split on whether there is coverage for "fax blasting", although the clear trend is clearly on the side of no coverage. Indeed, at least three federal appellate courts have found no coverage, and none have ruled the opposite way. Therefore, SIC's interpretation of the policy meets the "plausible" standard.

Accordingly, considerations of efficiency and prejudice militate in favor of bifurcating defendants' Chapter 93A claim from the balance of the action and staying all discovery until the coverage issues are decided on summary judgment.

## CONCLUSION

Rule 42(b) gives this Court broad discretion to bifurcate claims for discovery and trial "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to

7

expedition and economy . . . ." The instant dispute presents the classic situation wherein bifurcation of defendants' Chapter 93A from the coverage action would not only avoid prejudice but also promote judicial economy. Moreover, courts have inherent power to stay discovery, especially where resolution of a preliminary question would dispose of the entire case. This case presents just such a situation – resolution of the coverage issue will dispose of the entire case. To resolve that issue, no discovery is necessary. One need only apply the provisions of the Policy to the Complaint. Once that is done, it is clear no coverage exits. No amount of discovery will change that result.

        SCOTTSDALE INSURANCE CO.

        By its attorneys,

        */s/ George C. Rockas*
        George C. Rockas, BBO #544009
        Michele Carlucci, BBO#655211
        WILSON, ELSER, MOSKOWITZ,
        EDELMAN & DICKER LLP
        155 Federal Street
        Boston, MA 02110
        (617) 422-5300

## CERTIFICATE OF SERVICE

I, George C. Rockas, hereby certify that on February 15, 2006, I electronically filed the foregoing *Defendant Scottsdale Insurance Company's Memorandum in Support of Its Motion to Bifurcate the Chapter 93A Claim and Stay Discovery* and caused to be served a courtesy copy of the same to counsel of record by mailing the same via first class mail, postage prepaid, to the following:

Kerry D. Florio, Esq.
Melick, Porter & Shea LLP
28 State Street
Boston, MA 02109-1775

        /S/ George C. Rockas
        George C. Rockas