# EXHIBIT L

# ROBINSON & COLE LLP

CATHERINE N. O'DONNELL

One Boston Place
Boston, MA 02108-4404
Main (617) 557-5900
Fax (617) 557-5999
codonnell@rc.com
Direct (617) 557-5903

December 14, 2005

*Via Facsimile & First Class Mail*

Kerry Florio, Esq.
Melick, Porter & Shea LLP
Counselors at Law
28 State Street
Boston, MA 02109-1775

      Re:    *Insured:*    *ABC Mortgage Company*
            *Claimant:*  *Thomas Mulhern, et al.*
            *Policy No.:*  *CPS0394681*
            *Claim No.:*  *825650-30*

Dear Ms. Florio:

As you know, Robinson & Cole represents Scottsdale Insurance Company ("Scottsdale") as coverage counsel in connection with the captioned matter. Per our discussions, Scottsdale is prepared to assume the defense of John G. MacLeod d/b/a ABC Mortgage Company in the lawsuit captioned *Mulhern v. John G. MacLeod d/b/a ABC Mortgage Company*, filed in the Worcester Superior Court, Commonwealth of Massachusetts, Civil Action No. 02-2212 (hereafter the "*Mulhern* Action" or "Complaint"), subject to a full and complete reservation of rights.[1] Thank you for forwarding a copy of the First Amended Complaint in this matter last week.

Scottsdale has previously denied defense and indemnification coverage for the *Mulhern* Action.[2] As we discussed, Scottsdale will reimburse the insured for reasonable and necessary legal fees incurred in the defense of the *Mulhern* Action from the date of tender. Scottsdale will not pay for costs associated with rendering of coverage advice and the prosecution of the declaratory judgment action captioned *ABC Mortgage Corporation f/k/a John G. MacLeod d/b/a ABC Mortgage Co. v. Scottsdale Insurance Co.*, pending in the United States District Court of the District of Massachusetts, Civil Action No. 04-CV-10816 MLW ("DJ Action"). For the



*Law Offices*
BOSTON
HARTFORD
NEW LONDON
STAMFORD
WHITE PLAINS
NEW YORK CITY
SARASOTA
*www.rc.com*

---

[1] Scottsdale's claim handler for the defense of ABC Mortgage will be Susan Coltrara. You can reach her at 480-365-2536 or 800-423-7675 ext 2536.

[2] By correspondence dated December 3, 2002, July 30, 2003, and October 6, 2003.

BOST1-874312-2

go

# ROBINSON & COLE LLP

Kerry Florio, Esquire
December 14, 2005
Page 2

reasons we have discussed and which are outlined below, Scottsdale believes that the claims asserted in the Mulhern Action are not covered under the Policy. In order to protect the insured's interests, Scottsdale has agreed to assume the defense of the insured under a reservation of rights. It is Scottsdale's intention, however, to seek judicial confirmation that its conclusion regarding the absence of coverage is correct and accordingly Scottsdale reserves the right to pursue the DJ Action, seek a declaration of no coverage, and recoup defense costs in the Mulhern Action. This letter incorporates Scottsdale's previous coverage correspondence, sets forth the bases for its reservation of rights, and explains why coverage is not implicated under the Policy.

## The Policy

Scottsdale issued policy no. CPS0394681 (the "Policy") to John MacLeod d/b/a ABC Mortgage Company for the policy period December 14, 2000 to December 14, 2001.[3] The Policy contains General Liability Coverage written on an occurrence basis with a limit of $1.0 million per occurrence/$2.0 million in the aggregate. Coverage A of the Policy – Bodily Injury and Property Liability (as amended by endorsement) – provides that the insurer will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies and only if caused by an "occurrence."

The Policy further mandates that coverage will not be implicated where an insured knew that the "bodily injury" or "property damage" occurred prior to the policy period.

The Policy defines "property damage" as *"[p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or (b) [l]oss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."* In turn, the Policy defines occurrence as *"an accident, including continuous or repeated exposure to substantially the same general harmful conditions."*

---

[3] Coverage B – Personal and Advertising Injury Liability – is removed by endorsement.



# ROBINSON & COLE LLP

Kerry Florio, Esquire
December 14, 2005
Page 2

reasons we have discussed and which are outlined below, Scottsdale believes that the claims asserted in the Mulhern Action are not covered under the Policy. In order to protect the insured's interests, Scottsdale has agreed to assume the defense of the insured under a reservation of rights. It is Scottsdale's intention, however, to seek judicial confirmation that its conclusion regarding the absence of coverage is correct and accordingly Scottsdale reserves the right to pursue the DJ Action, seek a declaration of no coverage, and recoup defense costs in the Mulhern Action. This letter incorporates Scottsdale's previous coverage correspondence, sets forth the bases for its reservation of rights, and explains why coverage is not implicated under the Policy.

### The Policy

Scottsdale issued policy no. CPS0394681 (the "Policy") to John MacLeod d/b/a ABC Mortgage Company for the policy period December 14, 2000 to December 14, 2001.[3] The Policy contains General Liability Coverage written on an occurrence basis with a limit of $1.0 million per occurrence/$2.0 million in the aggregate. Coverage A of the Policy – Bodily Injury and Property Liability (as amended by endorsement) – provides that the insurer will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies and only if caused by an "occurrence."

The Policy further mandates that coverage will not be implicated where an insured knew that the "bodily injury" or "property damage" occurred prior to the policy period.

The Policy defines "property damage" as *"[p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or (b) [l]oss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."* In turn, the Policy defines occurrence as *"an accident, including continuous or repeated exposure to substantially the same general harmful conditions."*

---

[3] Coverage B – Personal and Advertising Injury Liability – is removed by endorsement.



# ROBINSON & COLE LLP

Kerry Florio, Esquire
December 14, 2005
Page 3

### The Mulhern Action

On October 4, 2002, plaintiff, Thomas Mulhern, individually, and on behalf of all persons similarly situated, filed a complaint against John G. MacLeod, d/b/a as ABC Mortgage Company. On or about November 18, 2004, plaintiff filed a First Amended Class Action Complaint. The Complaint alleges the repeated violation by ABC Mortgage of federal law prohibiting privacy violations via invasive telemarketing practices. The purported class action is brought pursuant to the provisions of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

The Complaint alleges that on four occasions between December 26, 2000 and January 23, 2001, ABC Mortgage transmitted unsolicited facsimile advertisements to Mr. Mulhern. On January 25, 2001, Mr. Mulhern allegedly wrote to ABC Mortgage and informed it that its repeated conduct in transmitting unsolicited facsimiles constituted a violation of the TCPA and Massachusetts Consumer Protection Act, G.L. c. 93A. ABC Mortgage allegedly ignored Mr. Mulhern's request and continued to send unsolicited facsimiles from February 2001 to January 2002. The Complaint alleges that ABC Mortgage does not obtain the consent of facsimile recipients prior to the transmittal of the faxes and did not obtain Mr. Mulhern's consent prior to the transmittal of any of the faxes to his home.

Count I of the Complaint is for violation of the TCPA for sending unsolicited fax advertisements; Count II is for injunctive relief to bar future TCPA violations; Count III is for injunctive relief (preservation of evidence); and, Count IV is for violation of G.L. c. 93A. As relief, plaintiff seeks, *inter alia*, an injunction to prevent the unauthorized transmittal of facsimiles and statutory damages for each separate violation of the TCPA by ABC Mortgage.

### Discussion

*Coverage is not implicated for Known Injury or Damage*

The Policy's "known injury or damage" limitation along with the common law "known loss" doctrine, prevents the insured from obtaining coverage for losses, claims or risks that have occurred or are substantially likely to occur when a policy takes effect. The Complaint alleges that ABC Mortgage engaged in widespread advertising via unsolicited facsimiles "over the past several years." The purported class consists of all persons or entities within Massachusetts to whom unsolicited facsimiles were sent from ABC Mortgage "on or after October 17, 1998." To the extent that it emerges that the insured received complaints or demands to cease its activities prior to the inception of the Policy, coverage will be precluded.



# ROBINSON & COLE LLP

Kerry Florio, Esquire
December 14, 2005
Page 4

### *The Mulhern Action does not Allege an Occurrence*

The allegations in the Mulhern Action regarding the repeated transmittal of unsolicited facsimiles, despite Mr. Mulhern's specific request to cease and desist, do not allege an occurrence or accident as defined in the Policy. Regardless of whether the insured "negligently caused facsimiles to be sent," the result to plaintiff was the same, i.e., the receipt of unsolicited facsimiles from the insured. Such actions cannot constitute an unexpected happening without intention or design.

Massachusetts courts have held that an injury which results from the volitional act of an insured is still an "accident" within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm or is not substantially certain that such harm will occur. Applying the most expansive interpretation of "occurrence", it is indisputable that the transmittal of the allegedly unsolicited facsimile(s) was the natural and probable consequence of the insured's actions.

As such, the allegations in the Mulhern Action fall outside the insuring agreement of the Policy. Consequently, Scottsdale specifically reserves the right to seek a declaration of no defense or indemnity coverage on this basis.

### *The Mulhern Action does not Allege Property Damage*

Coverage is also unavailable as the transmittal of the unsolicited facsimiles does not appear to satisfy the Policy's definition of property damage. The Mulhern Action does not seek recovery for alleged property damage and does not reference physical injury to, or loss of use of, tangible property. Instead, the Complaint seeks recovery for statutory damages and injunctive relief which fall outside the Policy's Insuring Agreement.

### *The Policy's Expected or Intended Injury Exclusion Operates to Preclude Coverage*

Coverage also does not apply for the additional and independently sufficient reason that the transmission of the facsimiles was intentional. Exclusion 2(a) provides that the Policy *"does not apply to ... 'property damage' expected or intended from the standpoint of the insured."* To the extent that it emerges that Mr. MacLeod intended for the transmittal of unsolicited facsimiles, Exclusion 2(a) would preclude coverage for the Mulhern Action.



# ROBINSON & COLE LLP

Kerry Florio, Esquire
December 14, 2005
Page 5

### *The Policy does not Provide Coverage for Injunctive Relief*

Counts II and III of the Mulhern Action seek injunctive relief which falls outside the insuring agreement of the Policy. Plaintiff seeks to enjoin Mr. MacLeod from committing further violations of the TCPA and from altering or destroying business records regarding the unsolicited facsimiles. Under Massachusetts law, the term "damages" limits the scope of coverage to monies paid to compensate a plaintiff. Damages does not encompass the cost of complying with injunctive relief with respect to future activities. Consequently, there is no coverage for the injunctive relief sought under Counts II and III of the Mulhern Action.

### *G.L. c. 93A*

Count IV seeks recovery for the insured's alleged unfair and deceptive acts and practices in sending unsolicited facsimiles and failing to make a reasonable offer of settlement under to plaintiff and the purported class. Coverage is not available under the Policy for any award of multiple damages arising out of the knowing or intentional violation of G.L.c. 93A because such awards serve as a penalty and/or constitute punitive damages uninsurable under G.L.c. 175, § 47, Sixth. Similarly, an award of attorneys' fees under G.L.c. 93A may not qualify as covered "damages" to the extent that it serves as a penalty.

### *Statutory Damages Under the TCPA*

Under the TCPA, a plaintiff may elect to either prove actual monetary loss or receive $500 in statutory damages for each violation of the TCPA. If a court determines that the insured willfully or knowingly violated the TCPA, it may increase the amount of the award to an amount equal to not more than three times the amount awarded as actual or statutory damages. See 47 U.S.C.S. § 227(b)(3).

The Mulhern Action states that the TCPA provides for statutory damages in the amount of a minimum of $500 for each violation of the TCPA. Plaintiff seeks an award of statutory damages for each separate violation of the TCPA by the insured. See Prayer for Relief at ¶ 4. Scottsdale specifically reserves the right to deny indemnification coverage for the statutory damages award. To the extent that plaintiff seeks to recover statutory damages, there is no coverage under the Policy.



# ROBINSON & COLE LLP

Kerry Florio, Esquire
December 14, 2005
Page 6

### *Defense Costs*

As we discussed, Scottsdale will not pay for legal fees incurred by the insured in the pursuit of the DJ Action. Further, Scottsdale specifically reserves the right to seek an allocation of costs between non-covered and potentially covered claims in the Mulhern Action and to recoup defense costs paid in the event of a declaration in the DJ Action that the Policy does not provide coverage for the alleged fax blasting activities of the insured.

### *Other Insurance*

We are under the impression that this matter has been defended by Employers Re the E&O carrier for the insured's broker, Dailey Tax and Insurance, Inc., and/or Maureen Gibbons d/b/a Dailey Tax and Insurance Service, based on the alleged failure to procure advertising injury coverage. Kindly forward any and all correspondence as to this carrier along with the coverage positions of all carriers placed on notice of this matter as soon as possible. Specifically, please advise whether Employers Re has agreed to provide defense and indemnification coverage for the Mulhern Action.

Scottsdale is reserving the right to assert all defenses to coverage under the Policy. In investigating the claim, defending the suit, or attempting any compromise settlement, Scottsdale is not waiving any rights nor admitting any obligation under the Policy.

Should you have any information that is contrary to that expressed above, or if you have any questions, comments or objections, please do not hesitate to contact me.

Sincerely,

Catherine N. O'Donnell

