UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 04-10816-MLW

```
* * * * * * * * * * * * * * * * * * * * * * * * *
                                                 *
ABC MORTGAGE CORPORATION                         *
f/k/a  JOHN G. MACLEOD d/b/a ABC                 *
MORTGAGE COMPANY,                                *
                                                 *
        Plaintiff,                               *
                                                 *
v.                                               *
                                                 *
SCOTTSDALE INSURANCE, CO.                        *
                                                 *
        Defendant.                               *
                                                 *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

The plaintiff, ABC Mortgage Corporation, formerly known as John G. MacLeod d/b/a ABC Mortgage Company (hereinafter "ABC Mortgage"), opposes the motion of the defendant, Scottsdale Insurance Company (hereinafter "SIC"), for summary judgment. As grounds for its opposition, ABC Mortgage states as follows:

**I. Introduction**

Between 2000 and 2002, ABC Mortgage employed marketing companies – Fax.com and Eloansites.com – to transmit advertisements to potential clients via facsimile. ABC Mortage was assured that these companies, which supplied the telephone numbers and controlled the equipment delivering the facsimiles, were acting appropriately and in compliance with all applicable laws. In 2002, however, one of the recipients of the facsimile advertisements filed suit, claiming that the

1

transmission of the facsimiles violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). ABC immediately notified its liability insurer, SIC.[1] SIC refused to defend and indemnify ABC, on the grounds that Mr. Mulhern's claims did not arise out of an "occurrence" causing "property damage."

Three years later, SIC finally agreed to fund the defense of the underlying TCPA action. It now seeks to escape its defense and indemnity obligations, arguing that the evidence establishes as a matter of law that ABC Mortgage specifically intended to inflict harm upon the recipients of the facsimile advertisements, and therefore that the claims do not arise from an "occurrence" subject to coverage under the policies. As discussed below, SIC's argument is without merit. Because the question of insurance coverage turns upon ABC Mortgage's state of mind, and there is ample evidence to show that ABC Mortgage never intended to cause harm to or otherwise impinge upon the legal rights of potential customers, material questions of fact preclude the entry of summary

---

[1] As SIC notes in passing, during the SIC policy period, ABC Mortgage had not yet been incorporated. Hence, it was named on the declarations page of the Policy as "ABC Mortgage Company, John MacLeod d/b/a." (*See* Exhibit A to Defendant's Statement of Material Facts). Throughout the remainder of the Policy, however, the named insured was identified as "ABC Mortgage Company." *Id.* It is clear that the commercial general liability policy was designed to apply to the business, which was described as a "mortgage broker office." *Id.* Because the business was later incorporated, this action was brought in the name of the insured business as it now exists – i.e., ABC Mortgage Corporation, formerly known as John G. MacLeod d/b/a ABC Mortgage Company. In short, SIC insured the business, and the business now seeks coverage under the policy. SIC maintains, however, that suit should have been filed in the name of Mr. MacLeod, because he and the business were one and the same at the time the policies in question were issued. SIC's assertion elevates form over substance. Even if it were correct, and summary judgment were granted on that basis, Mr. MacLeod would simply file a new action against SIC in his own name. In order to avoid delaying the resolution of the coverage issues and engaging in unnecessary litigation over whether ABC Mortgage Corporation and/or Mr. MacLeod may be viewed as the inheritor of ABC Mortgage Company's rights under the Policy, ABC Mortgage Corporation is filing a motion to amend the complaint to add John MacLeod as an additional plaintiff. That motion accompanies this opposition.

judgment.

## II. Statement of Additional Material Facts

In addition to the facts set forth in support of SIC's motion for summary judgment, ABC Mortgage submits the following additional material facts pertinent to the summary judgment issues:

1. From 1998 through December, 2002, ABC Mortgage Corporation conducted business as John G. MacLeod d/b/a ABC Mortgage Company. Affidavit of John Macleod, Jr., ¶3, Exhibit 1.

2. In December, 2002, ABC Mortgage Corporation was incorporated in the Commonwealth of Massachusetts. Affidavit of John Macleod, Jr., ¶4, Exhibit 1.

3. ABC Mortgage learned of marketing by facsimile when it received an informational fax from Fax.com, which had the endorsement of a client of ABC Mortgage. Affidavit of John Macleod, Jr., ¶5, Exhibit 1.

4. ABC Mortgage contracted with Fax.com, and later Eloansites.com, to conduct marketing on our behalf via facsimile. Affidavit of John Macleod, Jr., ¶6, Exhibit 1.

5. Fax.com and Eloansites.com conducted fax marketing on behalf of ABC Mortgage through computers set up in the basement of ABC Mortgage's business location. Affidavit of John Macleod, Jr., ¶7, Exhibit 1.

6. Fax.com and Eloansites.com were responsible for the daily operation of the fax marketing. Affidavit of John Macleod, Jr., ¶3, Exhibit 1.

7. Fax.com and Eloansites.com controlled the computers remotely and determined to whom the faxes would be sent. Affidavit of John Macleod, Jr., ¶9, Exhibit 1.

8. ABC Mortgage did not send the faxes or have control over the machines or to whom they would send faxes. Affidavit of John Macleod, Jr., ¶10, Exhibit 1.

9. ABC Mortgage was unaware of the TCPA when it contracted with Fax.com and Eloansites.com. Affidavit of John Macleod, Jr., ¶11, Exhibit 1.

10. Fax.com and Eloansites.com did not disclose that the TCPA imposed restrictions on marketing via facsimile. Affidavit of John Macleod, Jr., ¶12, Exhibit 1.

11. ABC Mortgage became aware of the TCPA at or about the time it received a letter from Thomas Mulhern, the plaintiff in the underlying class action, alleging that the faxes he had received violated the TCPA. Affidavit of John Macleod, Jr., ¶13, Exhibit 1.

12. ABC Mortgage inquired of Fax.com and Eloansites.com about the TCPA and the legality of the faxing, and was assured that it was in compliance with all regulations and legal. Affidavit of John Macleod, Jr., ¶14, Exhibit 1.

13. ABC Mortgage was not aware that the conduct of Fax.com or Eloansites.com or the conduct of ABC Mortgage in contracting with them might be construed as a violation of the TCPA. Affidavit of John Macleod, Jr., ¶15, Exhibit 1.

14. The plaintiff in the underlying action, *Thomas Mulhern v. John Macleod d/b/a ABC Mortgage Company,* alleged negligence on the part of John Macleod d/b/a ABC Mortgage Company and did not allege any intentional act. See Exhibit C to Defendant's Statement of Material Facts.

4

### III. Argument

A. **THE DETERMINATION OF WHETHER ABC MORTGAGE'S POTENTIAL LIABILITY IS THE RESULT OF AN "ACCIDENT" UNDER THE POLICY TURNS UPON ABC MORTGAGE'S STATE OF MIND, AND INVOLVES DISPUTED QUESTIONS OF FACT, RENDERING SUMMARY JUDGMENT INAPPROPRIATE.**

Summary judgment is inappropriate because disputed questions of fact exist regarding ABC Mortgage's state of mind when it retained Fax.com and Eloansites.com to transmit the facsimiles at issue in the underlying action. Unless ABC Mortgage acted with the specific intent to inflict damage upon the recipients of the facsimiles and knew that its conduct would cause legal harm in violation of the TCPA, any damage which arose out of ABC Mortgage's actions must be construed as accidental, and therefore subject to coverage under the terms of the Policy. Where, as here, a party's state of mind is at issue, summary judgment should be denied.

Abandoning one of the arguments relied upon in the earlier stages of this litigation, SIC now concedes that the recipients of unsolicited facsimiles sustain "property damage," in the form of the loss of use of the fax machine during the transmission, as well as the paper and toner used to print the facsimile. *See, e.g., Park University Enterprises, Inc. v. American Casualty Co. of Reading, PA*, 314 F.Supp.2d 1094, 1101-1102 (D.Kan. 2004); *Prime TV, LLC v. Travelers Ins. Co.*, 223 F.Supp.2d 744, 750 (M.D.N.C. 2002). Instead, SIC asserts that the sending of unsolicited facsimiles cannot be construed as an "accident," and therefore does not constitute a covered "occurrence." The argument is flawed.

Under Massachusetts law, "[t]he term 'accident' is to be broadly construed in a policy insuring against damage by accident." *Beacon Textiles Corp. v. Employers Mutual Liability Ins. Co. of Wisconsin*, 355 Mass. 643, 645, 246 N.E.2d 671, 673 (1969). Thus, in order for the insurer to

escape its coverage obligations, there must be a "showing that the insured knew to a substantial certainty that the ... injury would result." *Quincy Mutual Fire Ins. Co. v. Abernathy*, 393 Mass. 81, 86, 469 N.E.2d 797, 800 (1984). It is *not* enough to merely show that the act which resulted in the damage was a volitional one. Rather, the Supreme Judicial Court "consistently has stated that the resulting injury which ensues from a volitional act of an insured is still an 'accident' within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm or is not substantially certain that such harm will occur." *Id.*, 393 Mass. at 84, 469 N.E.2d at 799. In other words, "[t]he fact that the act itself is intended will not lead to an exclusion if no damage is expected or intended, or if damage of another type is expected or intended." *City of Newton v. Krasnigor*, 404 Mass. 682, 687 n.9, 536 N.E.2d 1078, 10832 n.9 (1989).

The standard of proof to show that the damage was expected or intended by the insured is a difficult one to meet, particularly at the summary judgment stage. "The granting of summary judgment in a case where a party's state of mind or motive constitutes an essential element of the cause of action is disfavored." *Quincy Mutual Fire Ins. Co., supra*, 393 Mass. at 86, 469 N.E.2d at 800 (citing cases). This is so because "[t]he issue of a party's intention or knowledge, raised by the pleadings, often cannot be resolved adequately from a consideration of the limited materials which accompany a summary judgment motion." *Id.*, 393 Mass. at 86, 469 N.E.2d at 801. Thus, in *Quincy Mutual Fire Ins. Co., supra*, the Court reversed summary judgment in favor of an insurer, and held that an insured who deliberately threw a rock at a moving car would be entitled to coverage for bodily injury sustained by the occupants of the car if he did not intend to harm them. *Id.*, 393 Mass. at 87-88, 469 N.E.2d at 801-802. In that case, the insured clearly intended to perform the act, but questions of fact remained as to whether he intended to cause the harm which resulted. Contrast *City*

*of Newton v. Krasnigor, supra*, 404 Mass. at 686 n.6, 536 N.E.2d at 1081 n.6 (insured who set fires in school not entitled to coverage, distinguishing *Quincy Mutual* on the grounds that it had "involved a determination of the insured's state of mind on a motion for summary judgment, whereas in this case the question of the insured's intent to set the fire was decided by a jury").

SIC claims that ABC Mortgage's state of mind may be established as a matter of law, because it intentionally sent the facsimiles, and therefore must have understood that the recipients would sustain "property damage" upon receipt of those facsimiles. This facile argument glosses over significant questions of fact pertaining to ABC Mortgage's intentions. While it is true that ABC Mortgage intended that Fax.com and Eloansites.com would send facsimiles, it does not follow that ABC Mortgage intended to inflict damage upon the recipients of those facsimiles, nor that it understood that legal harm would or could result from the sending of the facsimiles.

The handful of decisions in which courts have gone so far as to assert that the sending of unsolicited facsimiles can *never* be characterized as an "accident"( because the sending of a facsimile is always intentional, and always involves the use of the recipient's paper, toner and fax machine) simply cannot be reconciled with Massachusetts law. *See Western Rim Investment Advisors, Inc. v. Gulf Ins. Co.*, 269 F.Supp.2d 836, 845 (N.D. Tex. 2003), *aff'd* 96 Fed.Appx. 960 (5th Cir. 2004); *American States Ins. Co. v. Capital Associates of Jackson County, Inc.*, 392 F.3d 939 (7th Cir. 2004); *St. Paul Fire and Marine Ins. Co. v. Brunswick Corp.*, 405 F.Supp.2d 890 (N.D.Ill. 2005); *Terra Nova Ins. Co. v. Metropolitan Antiques, LLC*, Suffolk Superior Court Civil Action No. 03-3718-BLS1 (2006) (attached to SIC's memorandum as Exhibit 2). Each of those decisions addresses the issue in cursory and conclusory fashion, however, and fails to acknowledge that a volitional act may be the result of a misapprehension by the actor, or that the actor may not adequately understand

7

– and therefore intend – the consequences which may flow from the act.

These decisions are not consistent with Massachusetts law. For example, in *J. D'Amico, Inc. v. City of Boston*, 345 Mass. 218, 186 N.E.2d 716 (1962), the plaintiff contractor was instructed by a city engineer to cut down trees in connection with a road widening project, without realizing that the trees in question were on private property outside of the eminent domain taking. When the landowner sued the contractor, it sought coverage from its liability insurer, which sought to avoid coverage by claiming that the cutting of the trees was not accidental. Although the insured had deliberately cut down the trees, the Supreme Judicial Court nevertheless held that "trespass by D'Amico by mistake, or without actual intent to invade property upon which it knew it was not entitled to carry on work under its contract, would be 'caused by accident' within the policy." *Id.*, 345 Mass. at 224, 186 N.E.2d at 720-721. Likewise, an insured which transmits unsolicited facsimiles under the mistaken belief that it is legally entitled to do so, and without any actual intent to impinge upon the legal rights of the recipients, is entitled to insurance coverage under Massachusetts law.

In considering the issue of insurance coverage for TCPA claims, most courts have implicitly rejected the absolutist approach described above, and focused instead upon the insured's state of mind – i.e., whether the insured actually intended to send unsolicited facsimiles, or mistakenly believed that the recipients had consented to the sending of the facsimiles. Nearly every court to consider this question has concluded that an insurer would be obligated to provide coverage for claims by recipients whom the insured erroneously believed had consented to the sending of the facsimiles. *See Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*, 401 F.3d 876 (8th Cir. 2005) (where insured denied intentionally sending unsolicited faxes, questions of fact

8

precluded entry of summary judgment for insurer); *Park University Enterprises, Inc. v. American Casualty Co. of Reading, PA*, 314 F.Supp.2d 1094, 1105 (D.Kan. 2004) ("If [insured] believed, even erroneously, that it was sending a facsimile to someone who wanted such facsimile, then [insured] did not intend to cause damages"); *Prime TV, LLC v. Travelers Ins. Co.*, 223 F.Supp.2d 744 (M.D.N.C. 2002) (sending of unsolicited facsimiles was not an "intentional act made with the intent to cause property damage," if insured believed that the recipients had requested the information); *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 359 Ill.App.3d 872, 834 N.E.2d 562 (2005) (insurer had duty to defend where complaint alleged that insured "should have known" that facsimiles were unsolicited); *Acuity, a Mutual Ins. Co. v. Superior Marketing Systems, Inc.*, 2003 WL 24004567 (Ill. Cir., 2003) (whether damage caused by sending unsolicited faxes was "expected or intended" by the insured was a question of fact). Even in *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631 (4th Cir. 2005) – the case most heavily relied upon by SIC – the Fourth Circuit Court of Appeals ruled that the insurer was entitled to summary judgment on the issue of coverage because the insured presented no evidence to show that a reasonable person could mistakenly have believed that the recipients had expressly consented to receipt of the faxes.

As these courts have correctly acknowledged, the deliberate transmission of an unsolicited facsimile, resulting in the predictable use of the recipient's fax machine, paper and toner, may nevertheless constitute an "accident" for purposes of insurance coverage. It is the state of mind of the insured in sending the facsimiles which is the critical factor in determining whether the "damage" incurred by the recipients may properly be characterized as accidental. Either way, the insured is intentionally engaging in an act which is in violation of the TCPA, but the insured's subjective – albeit mistaken – belief that his or her conduct was in compliance with the law transforms the

9

volitional act into an "accident" for purposes of insurance coverage.

Such is the case here, as well. MacLeod subjectively believed – perhaps mistakenly – that the transmission of those facsimiles was in compliance with all applicable laws. Like the insureds in the cases discussed above, MacLeod did not realize that the TCPA might prohibit the sending of the facsimiles at issue.[2] While MacLeod's ignorance of the TCPA might not excuse his alleged failure to comply with the law, it prevented him from forming the subjective intent necessary to deprive ABC Mortgage of insurance coverage for the recipients' claims.

Significantly, MacLeod's misapprehension of the legal effect of the transmission of the facsimiles in question was not merely the result of his own failure to acquaint himself with the applicable law. Rather, his misunderstanding was the result of his reliance upon false assurances which he received from representatives of Fax.com and Eloansites.com, who were engaged in the business of facsimile marketing and could reasonably be presumed to have much greater familiarity with the limitations imposed by the TCPA. Indeed, ABC Mortgage itself was not directly involved in the transmission of the purportedly unsolicited facsimiles, which were sent by Fax.com and Eloansites.com to potential customers using telephone numbers generated by the marketers themselves, not by ABC Mortgage. MacLeod hired Fax.com and Eloansites.com to perform a service, with the understanding that they would do so appropriately and in compliance with all

---

[2]Moreover, as a result of his ignorance of the TCPA, MacLeod was unaware of the *type* of "damages" which the sending of an unsolicited facsimile could be deemed to cause. He may have been aware that the recipient would incur the cost of a few pennies' worth of paper and toner, but he was not aware that the recipient could recover statutory damages of $500. Indeed, he was unaware that the consequences of sending a facsimile could properly be characterized as "damages" at all. Thus, he did not "specifically intend" to inflict "the type of harm" for which the TCPA provides recovery, and his actions must be viewed as an "accident" for insurance coverage purposes. *City of Newton v. Krasnigor, supra*, 404 Mass. at 686, 536 N.E.2d at 1081.

applicable laws. In this regard, he was no different than a homeowner who hires a contractor to perform work, with the understanding and assurances that the contractor will comply with all applicable codes. If the contractor deliberately violates the codes, creating a dangerous condition which causes injury to a third party, the homeowner who hired the contractor is still entitled to a defense and indemnity, and could not be deemed to have intended the third party's injury. By the same token, ABC Mortgage should not be deprived of insurance coverage simply because MacLeod relied upon the expertise and assurances of third-party facsimile marketing companies which – unbeknownst to him – allegedly violated the TCPA.

At the very least, then, there are material questions of disputed fact pertaining to ABC Mortgage's state of mind, and therefore the issue of whether ABC Mortgage is entitled to coverage for the class action against it cannot be decided at the summary judgment stage.

**B.  QUESTIONS OF FACT PRECLUDE THE ENTRY OF SUMMARY JUDGMENT ON ABC MORTGAGE'S CHAPTER 93A CLAIM.**

If the issue of coverage cannot be decided at the summary judgment stage, then ABC Mortgage's claim against SIC for violation of G.L. c. 93A cannot be decided either. SIC maintains that its initial denial of coverage and refusal to defend were premised upon a "plausible" interpretation of the policy, and that it therefore cannot be held liable under c. 93A, even if its interpretation is ultimately determined to have been incorrect. *Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 406 Mass. 7, 15, 545 N.E.2d 1156, 1160 (1989). What SIC neglects to mention is that its coverage position must not only be "plausible," but also must be relied upon in "good faith." *Id.* Indeed, even if the Court were to accept SIC's current position and determine that the policy does not provide coverage, the question would remain whether SIC's *initial* refusal

to defend and indemnify was made in good faith. Thus, summary judgment would not be appropriate on the claim pursuant to c. 93A, regardless of the resolution of the coverage issue, as long as questions remain regarding SIC's initial response to its insured's demand for defense and indemnity.

The question of whether SIC acted in good faith when it denied coverage and refused to defend is open to serious dispute. In its initial denial letter, SIC asserted that "[n]one of the allegations contained in the Complaint constitute an 'occurrence' resulting in 'bodily injury' or 'property damage.'" (*See* Exhibit E to Defendant's Statement of Material Facts). It offered no further elaboration upon its position, which raises the question: was SIC denying coverage because it believed that the claim did not arise from an "occurrence," or because it did not involve "property damage?" If it was the former, then SIC apparently leapt to the conclusion that ABC Mortgage had acted with the specific intent to violate the TCPA. In other words, without conducting any investigation, SIC presumed to know its insured's state of mind on the basis of nothing more than the plaintiff's complaint, even though the complaint itself alleged only negligence rather than intentional misconduct by ABC Mortgage. On the other hand, if SIC's position was based on the assertion that ABC Mortgage's alleged actions had caused no "property damage," then its position was utterly without merit, as demonstrated by the fact that SIC has now abandoned that argument altogether. Moreover, at the time of the initial denial letter, in December, 2002, only *one* of the cases cited in its summary judgment memorandum regarding insurance coverage for TCPA claims had been decided, and that case – *Prime TV, LLC v. Travelers Ins. Co.*, 223 F.Supp.2d 744 (M.D.N.C. 2002) – interpreted identical policy language and reached precisely the opposite conclusions, holding that the transmission of unsolicited facsimiles *did* constitute "property damage," and that

such damage could be the result of an "occurrence," depending upon the insured's state of mind. *Id.* at 750-752.

Under these circumstances, there is a very real question whether SIC engaged in any meaningful investigation or analysis of the coverage issues before issuing its initial response, or whether it simply issued a knee-jerk denial in the hope that its insured and/or the claimant would not pursue the matter further. This inference is bolstered by SIC's repeated delays and utter failure to respond to ABC Mortgage's 93A demands and its failure to provide any substantive basis for its coverage denial. See Complaint, attached as Exhibit D to Defendant's Statement of Undisputed Facts. In this regard, it is significant that SIC not only refused to indemnify ABC Mortgage, but also refused to defend the underlying action. In light of the well-established principle that "an insurance company's duty to defend is broader than its duty to indemnify," *Boston Symphony Orchestra, supra,* 406 Mass. at 10, 545 N.E.2d at 1158, *Ruggiero Ambulance Service, Inc. v. National Grange Mutual Ins. Co.*, 430 Mass. 794, 796, 724 N.E.2d 295, 298 (2000), SIC's refusal to defend when the *only* reported case on point at the time supported a finding of at least potential coverage smacks of bad faith stonewalling. The fact that SIC later reversed itself – two years later, and after ABC Mortgage had filed suit against it – and agreed to assume the defense and reimburse its insured for defense costs associated with the underlying case lends further support to the inference that SIC's initial position was not taken in good faith.

Even if these facts were not sufficient, in and of themselves, to present a question of fact regarding whether SIC's coverage position was asserted in good faith, the only way for ABC Mortgage to explore the issue and gather evidence to support its position would be to conduct discovery. By deposing the SIC claims personnel who participated in the decision to deny coverage

and refuse to defend, and by examining SIC's claims file, ABC Mortgage may gather additional evidence to support its c. 93A claim. To date, however, SIC has refused to respond to ABC Mortgage's discovery requests, and now seeks to delay discovery until *after* the summary judgment motion has been decided. To the contrary, ABC Mortgage is entitled to conduct discovery on the c. 93A issues *before* the Court rules upon SIC's assertion that the evidence does not support ABC Mortgage's claim. Accordingly, if the Court is not persuaded to deny SIC's motion for summary judgment on the record before it, then the Court should postpone its ruling on the motion pursuant to Fed. R. Civ. P. 56(f), and permit ABC Mortgage to conduct discovery on these issues.

SIC's remaining arguments with regard to the c. 93A claim are without merit, and may be dispensed with quickly. First, SIC notes that ABC Mortgage's complaint alleges that SIC engaged in unfair claims settlement practices which violated G.L. c. 176D, § 3(9), and cites *Spencer Press, Inc. v. Utica Mutual Ins. Co.*, 42 Mass. App. Ct. 631, 636, 679 N.E.2d 236, 239 (1997), for the proposition that "a violation of G.L. c. 176D, § 3(9) ... does not support a § 11 action, i.e., business against business claim, under c. 93A." As subsequent decisions have made clear, however, the mere fact that § 11 does not provide a private cause of action for every violation of c. 176D, § 3(9) does not mean that c. 176D is irrelevant to the question of whether the defendant insurer has committed unfair or deceptive acts or practices in violation of c. 93A, § 2, giving rise to a cause of action pursuant to § 11. To the contrary, the Supreme Judicial Court has made clear that evidence in a § 11 case which demonstrates that an insurer has violated c. 176D, § 3(9) may be relied upon as "persuasive evidence" that the insurer's conduct *also* violated c. 93A, § 2. *R.W. Granger & Sons, Inc. v. J&S Insulation, Inc.*, 435 Mass. 66, 78, 754 N.E.2d 668, 679 (2001). *See also M. DeMatteo Construction Co. v. Century Indemnity Co.*, 182 F.Supp.2d 146, 160-162 (2001); *Kiewit*

*Construction Co. v. Westchester Fire Ins. Co.*, 878 F. Supp. 298, 302 (D.Mass. 1995). Moreover, ABC Mortgage's complaint expressly alleges that SIC's conduct violated both c. 176D *and* c. 93A.

Finally, SIC argues that ABC Mortgage sustained no damages as a result of its actions, because it eventually agreed to pay ABC Mortgage's defense costs in the underlying action. However, SIC only agreed to acknowledge its duty to defend after ABC Mortgage had incurred substantial attorneys' fees and costs pursuing this action. Thus, the attorneys' fees and costs incurred in this action, up through the time of SIC's agreement to pay defense costs, were incurred, at least in part, as a direct result of SIC's wrongful refusal to defend the underlying action. Thus, they constitute actual damages recoverable pursuant to G.L. c. 93A, regardless of whether ABC Mortgage ultimately prevails on its coverage claim. Moreover, to the extent that ABC Mortgage does prevail on its coverage claim, it is clearly entitled to recover all of the attorneys' fees and costs which have been incurred in pursuing this action.

In *Preferred Mutual Ins. Co. v. Gamache*, 426 Mass. 93, 686 N.E.2d 989 (1997), and *Rubenstein v. Royal Ins. Co. of America*, 429 Mass. 355, 708 N.E.2d 639 (1999), the Supreme Judicial Court held that a liability insurer which forces its insured to institute or defend a declaratory judgment action in order to establish that the insurer has a duty to defend and indemnify the insured is entitled to recover the attorneys' fees and costs incurred in the declaratory judgment action. Since ABC Mortgage would not have incurred the fees and costs in the absence of SIC's wrongful refusal to defend and/or indemnify its insured, it follows that those fees and costs should be viewed as actual damages proximately caused by SIC's violation of G.L. c. 93A. Nothing in *Gamache* or *Rubenstein* is to the contrary.

## IV. Conclusion

For the foregoing reasons, the plaintiff, ABC Mortgage Corporation f/k/a John MacLeod d/b/a ABC Mortgage Company, respectfully requests that the defendant's motion for summary judgment be DENIED or, in the alternative, that the Court's ruling on the defendant's motion be postponed pursuant to Fed. R. Civ. P. 56(f) pending the completion of discovery with regard to the claim for violation of G.L. c. 93A.

        ABC MORTGAGE CORPORATION,
        By its attorneys,


        /s/ Kerry D. Florio
        William D. Chapman, BBO #551261
        Michael R. Byrne, BBO #558899
        Kerry D. Florio, BBO# 647489
        MELICK, PORTER & SHEA, LLP
        28 State Street, 22nd Floor
        Boston, MA  02109-1775
        (617) 523-6200

Date: March 1, 2006

### CERTIFICATE OF SERVICE

I, Kerry D. Florio, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 1, 2006.

        /s/ Kerry D. Florio
        Kerry D. Florio